PETER GOLDSTONE, SBN 221220
NANCY A. PALANDATI SBN 169987
Palandati-Goldstone LLP
703 Second Street, Suite 411
Santa Rosa, California 95404
(707) 222-3115
(707) 237-6070

Attorneys for Plaintiffs NATALYA SHUVALOVA
and ELIZABETH SHUVALOVA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALYA SHUVALOVA and ELIZABETH SHUVALOVA, by and through her Guardian Ad Litem NATALYA SHUVALOVA, | Case No. CV: 10:2159 RS |
| | **OPPOSITION TO MOTION TO DISMISS [F.R.C.P. RULE 12(b)(6)]** |
| Plaintiffs, | |
| v. | **Date: September 23, 2010** |
| | **Time: 10:30 a.m.** |
| JOSEPH RICHARD CUNNINGHAM, DANIEL CUNNINGHAM, and DOES 1 – 50 Inclusive. | **Dept: Courtroom 3, 17th Floor** |
| | |
| Defendants. | **Honorable Richard Seeborg** |

0

# TABLE OF CONTENTS

I.  Brief Summary of Factual Background...............................................................................1

II. Legal Standard...........................................................................................................2

    A.  Motions to Dismiss Are Disfavored   ………………………………………2

    B.  Standard of Review………………………………………………………….3

    C.  Defendants Must Meet the Burden of a 12(b)(6) Challenge……………………3

    D.  The Court Must Accept Plaintiffs'' Factual Allegations As True………………4

    E.  The Complaint Must Be Construed In The Light Most Favorable To Plaintiffs…4

    F.  Rule 12(b)(6) Dismissal Are Disfavored Where A Novel Theory Is Presented….5

III. Defendants' Motion Fails..............................................................................................6

    A.  The First Two Causes of Action for Forced Labor and Trafficking Into Servitude
        are Sufficiently Plead..........................................................................................6

        1.  Defendants Failed To Address § 1590 claims……………………………6

        2.  Plaintiffs Have A Private Cause of Action ……………………………….7

        3.  Plaintiffs' Specially Pled the Elements of 18 U.S.C. 1589 (a)...................8

    B.  The Second Cause of Action for Trafficking Into Servitude and TVPRA Survives
        State Facts Supporting a Cause of Action and Should Not be Dismissed.............11

    C.  Plaintiffs More Than Meet The Pleading Requirements For Their Fifth, Twelfth,
        Thirteenth, Fifteenth and Sixteenth Cause of Action…………………………….13

        1.  Elevated Burden for Fraud Claims:  Particularity………………………..14

    D.  Plaintiffs' State & Federal Labor Claims Easily Survive This Motion…………17

        1.  FLSA Claims…………………………………………………………..18
        2.  California Labor Code Claims…………………………………………..19

        3.  "Economic Reality" Test Does Not Apply……………………………...20

    E.  Defendants' Motion Does Not Address Plaintiffs' Causes Of Action 3, 4, 6, 14,
        17 Or 18 And Should Not Be Considered As Part Of Their Motion…………   20

IV. Request For Leave To Amend………………………………………………………...22

i

V.    Conclusion …………………………………………………………………22

# TABLE OF AUTHORITES

**Cases**

*Alan Neuman Prods., Inc. v. Albright*
      862 F.2d 1388, 1393 (9th Cir.1988)..............................................14

*Albergo v. Immunosyn Corp.*
      2010 WL 3339398, 3 (S.D.Cal.) (S.D.Cal.,2010).........................14

*Allison v. California Adult Authority*
      (9th Cir. 1969) 419 F2d 822, 823..................................................5

*Ashcroft v. Iqbal*
      129 S.Ct. 1937, 1951 (U.S.,2009)...............................................4, 5

*Asher v. Reliance Ins. Co.*,
      308 F.Supp. 847 (N.D. CA 1970)..................................................8

*Barker v. Riverside County Office of Ed.*
      (9th Cir. 2009) 584 F.3d 821, 824................................................5

*Baker v. Cuomo*
      (2nd Cir. 1995) 58 F3d 814, 818–819...........................................6

*Bell Atl. Corp. v. Twombly*,
      (2007) 550 US 544, 556, 127 S.Ct. 1955, 1965........................2, 4, 5

*Bernheim v. Litt*
      (2nd Cir. 1996) 79 F3d 318, 321..................................................4

*Braden v. Wal-mart Stores, Inc.*
      (8th Cir. 2009) 588 F3d 585, 595.................................................4

*Broan v. Bofan*,
      320 F.3d 1023, 1028 (9th Cir. 2008).............................................2

*Canal v. Dann* Slip Copy WL 3491136 (N.D. Cal. 2010)………………….8, 18

*Columbia Natural Resources, Inc. v. Tatum*
      (6th Cir. 1995) 58 F3d 1101, 1109...............................................5

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)……………………………….3

ii

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*
 911 F.2d 242, 246-47 (9[th]Cir.1990)……………………………………………………..22

*Diaz v. International Longshore and Warehouse Union, Local 13*
 474 F.3d 1202, 1205 (C.A.9 (Cal.),2007).......................................................2,3

*Doe v. United States Dept. of Justice*
 (DC Cir. 1985) 753 F2d 1092, 1104.................................................................8

*Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132……………………………………….3

*Felton v. Walston & Co., Inc.*
 508 F.2d 577 (C.A.2 (N.Y.) 1974)………………………………………………………..15

*Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*
 814 F.Supp. 720 (N.D.Ill.1993)………………………………………………………….15

*Future Tech Intern., Inc. v. Tae Il Media, Ltd.*
 944 F.Supp. 1538 (S.D.Fla.1996)……………………………………………………….15

*Gardner v. American Home Mortg. Servicing, Inc.*
 691 F.Supp.2d 1192, 1199 (2010).................................................................4

*Gregory v. Dillard's, Inc.*
 (8th Cir. 2009) 565 F.3d 464, 496.................................................................4

*Haddock v. Board of Dental Examiners of Calif.*
 777 F.2d 462, 464 (9th Cir. 1985).................................................................8

*Hernandez v. Attisha*
 2010 WL 816160 (S.D.Cal.,2010)..............................................................7, 18

*Hillblom v. County of Fresno*
 539 F.Supp.2d 1192, 1206 (2008).................................................................4

*Hishon v. King & Spalding*
 467 U.S. 69, 73……………………………………………………………………………..3

*Holman v. Indiana*
 (7th Cir. 2000) 211 F3d 399, 407.................................................................5

*Hydrick v. Hunter*
 466 F.3d 676, 686 (9th Cir.2006)………........................................................3

*In Re Delmarva Sec. Litig.,*
 794 F.Supp. 1293, 1298 (1992).................................................................3

iii

*In re Estate of Young,*
    160 Cal.App.4th 62, 79, 72 Cal.Rptr.3d 520 (2008)........................................................15

*In re GlenFed, Inc. Sec. Litig.,*
    42 F.3d 1541, 1548 (9th Cir.1994) ...................................................................................14

*In re Nat. Student Marketing Litigation*
    413 F.Supp. 1156 (D.C.D.C.1976)...................................................................................15

*Johnsrud v. Carter,*
    620 F.2d 29, 33 (1980)........................................................................................................3

*Jordan v. Western Distributing Co.,*
    286 F.Supp.2d 545 (D.Md.2003), *aff'd* 135 Fed.Appx. 582, 2005 WL 1009642.........14

*Lomand v. UIS Unwired, Inc.,*
    565 F. 2d 228, 232 (2009). ..................................................................................................2

*Marder v. Lopez*
    450 F.3d 445, 448 (9th Cir.2006)....................................................................................2, 3

*Martinez v. Calimlim*
    651 F.Supp.2d 852 (E.D. Wisc. 2009)........................................................................6, 7, 8

*Massey v. Banning Unified School Dist.,*
    256 F.Supp.2d 1090, 1092 (CD CA 2003)..........................................................................8

*Minger v. Green*
    239 F,3d 793, 799–801(6th Cir. 2001)................................................................................8

*Moore v. Kayport Package Express,*
    885 F.2d 531, 540 (9th Cir.1989)......................................................................................14

*Nami v. Fauver*
    (3rd Cir. 1996) 82 F3d 63, 65..............................................................................................5

*Neubronner v. Milken,*
    6 F.3d 666, 671-672 (9th Cir.1993)...................................................................................14

*NL Indus., Inc. v. Kaplan*
    792 F.2d 896, 898 (9th Cir.1986).........................................................................................4

*Padilla v. Yoo*
    633 F.Supp.2d 1005 (2009)..................................................................................................4

iv

*Peloza v. Capistrano Unified School Dist.*
    (9th Cir. 1994) 37 F3d 517, 521.................................................4

*Reddy v. Litton Indus., Inc.*

    912 F.2d 291, 296 (9thCir.1990)…………………………………………………22

*Rescuecom Corp. v. Google Inc.*
    (2nd Cir. 2009) 562 F.3d 123, 127.........................................4

*Scheuer v. Rhodes*
    416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)…………………………3

*Scott v. Ambani*
    (6th Cir. 2009) 577 F.3d 642, 646.........................................4

*Spurlock v. Carrington Mortg. Services, Inc.*
    2010 WL 3069733, 1 -7  (S.D.Cal.,2010) .............................15, 17

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506 (2002)…………………………………………………………3

*Tybout v. Karr Barth Pension Admin., Inc.*
    819 F.Supp. 371, 376 (1993)..............................................3

*United States v. White*
    893 F.Supp. 1423, 1428 (CD CA 1995).....................................8


**Statutes**

FRCP Rule 12(b)(6).................................................................2, 3, 4, 5, 11

FRCP Rule 8(a)....................................................................................3

FRCP Rule 9(b)...............................................................................13, 14

18 U.S.C. §§ 1589 and 1595.............................................................4, 5, 6, 8, 9

8 U.S.C. §§ 1590 and 1595.............................................................6, 7, 20, 22

29 U.S.C. § 203(g)..............................................................................18

29 U.S.C. § 552.3................................................................................18

29 U.S.C. § 552.101.............................................................................23

29 U.S.C. § 552.107.............................................................................19

Industrial Welfare Commission (IWC) Order No. 15-2001...................................19, 20

Trafficking Victims Protection Reauthorization Act of 2008.........................................5, 6, 7, 8, 11

PETER GOLDSTONE, SBN 221220
NANCY A. PALANDATI SBN 169987
Palandati-Goldstone LLP
703 Second Street, Suite 411
Santa Rosa, California  95404
(707) 222-3115
(707) 237-6070

Attorneys for Plaintiffs NATALYA SHUVALOVA
and ELIZABETH SHUVALOVA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALYA SHUVALOVA and ELIZABETH SHUVALOVA, by and through her Guardian Ad Litem NATALYA SHUVALOVA,<br><br>          Plaintiffs,<br><br>v.<br><br>JOSEPH RICHARD CUNNINGHAM, DANIEL CUNNINGHAM, and DOES 1 – 50 Inclusive.<br><br>          Defendants. | Case No. CV: 10:2159 RS<br><br>**OPPOSITION TO MOTION TO DISMISS [F.R.C.P. RULE 12(b)(6)]**<br><br>**Date:  September 23, 2010**<br>**Time: 10:30 a.m.**<br>**Dept: Courtroom 3, 17th Floor**<br><br>**Honorable Richard Seeborg** |

Plaintiffs, through their counsel of record submit the following Opposition To Motion to Dismiss [(F.R.C.P. Rule 12(b)(6)].

## I.     BRIEF SUMMARY OF FACTUAL BACKGROUND

Natalya Shuvalova (Natalya) and her daughter Elizabeth (Liza) are victims of human trafficking, brought into this country under false promises and pretenses.  Defendants Joseph

Cunningham (Joe) and his middle-aged son, Daniel Cunningham (Dan), knowingly and willfully conspired to lure Natalya to bring her minor daughter, Liza, from their home in Russia, with false promises of joining a loving and supportive family through marriage. Once on Joe's isolated, rural property in Lake County, California, Joe began a campaign of abuse and terror subjecting Natalya and Elizabeth to what would become more than seven long months of backbreaking labor, psychological abuse and threats of physical harm and death.

Defendants seek to escape any liability without defending against the allegations of Natalya and Liza. Without citing to any evidence Defendants make the spurious and conclusory claim that Liza and Natalya are scammers using Defendants and this lawsuit to "avoid deportation." See, Defendants' Motion To Dismiss Pursuant to FRCP Rule 12(B)6 ("Defs. Motion") 2:5. The complaint, however, contains sufficient facts to support all causes of action and, construed in a light most favorable to Plaintiffs, the Complaint survives this frivolous 12(b)(6) motion.

## II.     LAW & ARGUMENT

### A.     <u>Motions To Dismiss Are Disfavored</u>:

Courts disfavor motions to dismiss because of the lesser role pleadings play in federal practice and the liberal policy towards amendment. See e.g. *Lomand v. U.S. Unwired, Inc.*, 565 F. 2d 228, 232 (2009). In fact, dismissal with prejudice (the order sought by Defendants) is only proper in "extraordinary cases." *Broan v. Bofan*, 320 F.3d 1023, 1028 (9th Cir. 2008). "A complaint survives a motion to dismiss if it contains 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, *Twombly* also held that courts must accept all material factual allegations in the complaint as true: "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly* at 556, 127 (internal quotes omitted).

2

*Diaz v. International Longshore and Warehouse Union, Local 13* 474 F.3d 1202, 1205 (C.A.9 (Cal.) 2007) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)) is instructive:

> "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006). Under the notice pleading standard of the Federal Rules, plaintiffs are only required to give a "short and plain statement" of their claims in the complaint. Fed.R.Civ.P. 8(a). "Thus, '[w]hen a federal court reviews the sufficiency of a complaint, [our] task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Hydrick v. Hunter*, 466 F.3d 676, 686 (9th Cir.2006) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (alterations in *Hydrick* )).

*Diaz*, at 1205.

## B.      Standard of Review

The purpose of Rule 8(a) is to simply require that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132 (9th Cir.2002), citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73.

## C.      Defendants Must Meet The Burden of A 12(b)(6) Challenge

While under 12(b)(6) "[a] count of a complaint may be dismissed for failure to state a claim … the burden to show the failure rests with the moving party." *Tybout v. Karr Barth*

3

*Pension Admin., Inc.* 819 F.Supp. 371, 376 (1993) citing *In Re Delmarva Sec. Litig.,* 794 F.Supp. 1293, 1298 (1992). See also, *Johnsrud v. Carter, 620 F.2d 29, 33* (1980). Nor can Defendants correct this failure in their reply. See *Hillblom v. County of Fresno*, 539 F.Supp.2d 1192, 1206 (2008); *Gardner v. American Home Mortg. Servicing, Inc.,* 691 F.Supp.2d 1192, 1199 (2010).

### D.   The Court Must Accept Plaintiffs' Factual Allegations As True

All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.* (2nd Cir. 2009) 562 F.3d 123, 127; see also *Scott v. Ambani* (6th Cir. 2009) 577 F.3d 642 646; *Gregory v. Dillard's, Inc.* (8th Cir. 2009) 565 F.3d 464, 496. Moreover, courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified School Dist.* (9th Cir. 1994) 37 F.3d 517, 521.

Regardless of how improbable, the facts must be accepted as true for purposes of the motion. *Twombly*, at 556,; *Bernheim v. Litt* (2nd Cir. 1996) 79 F.3d 318, 321 ("Recovery may seem remote and unlikely on the face of the pleading, but that is not the test for dismissal").

### E.   The Complaint Must Be Construed In The Light Most Favorable To Plaintiffs

Defendants suggest that the burden of survival of a 12(b)(6) motion lies with the plaintiff to "*show* facial plausibility," relying on the recent ruling in *Ashcroft v. Iqbal* 129 S.Ct. 1937 (2009). But even under *Iqbal*, Defendants must show that Plaintiffs have failed to sufficiently state causes of action. Specifically, Justice Kennedy wrote: "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949. In a later case, the Northern District of California in *Padilla v. Yoo* 633 F.Supp.2d 1005 (2009) held that "to survive a motion to dismiss, a plaintiff's burden is limited to setting forth factual allegations sufficient to 'raise the right to relief above the speculative level.'" *Id.* at 1019 (citing *Twombly*).

*Twombly* further held that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly,* at 556.

The question of Plaintiffs' ability to prove their allegations, (or difficulties of proof), is irrelevant to a 12(b)(6) motion: "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami v. Fauver* 82 F.3d 63, 65 (3rd Cir. 1996); see *Allison v. California Adult Authority* 419 F2d 822, 823 (9th Cir. 1969).

All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim. *Braden v. Wal-mart Stores, Inc.* (8th Cir. 2009) 588 F3d 585, 595. "*Twombly* and *Iqbal* did not change this fundamental tenant of Rule 12(b)(6) practice[.]" See also *Barker v. Riverside County Office of Ed.* (9th Cir. 2009) 584 F.3d 821, 824. Ambiguous inferences (allegations capable of more than one inference) must be resolved to whichever inference supports a valid claim. *Columbia Natural Resources, Inc. v. Tatum* (6th Cir. 1995) 58 F.3d 1101, 1109.

**F.** **Rule 12(b)(6) Dismissals Are Disfavored Where A Novel Theory Is Presented**

The case at hand contains a novel theory– Plaintiffs ask the Court to look at a human trafficking situation that does not appear as a standard employment relationship (but nonetheless

meets the standards of Trafficking Victims Protection Reauthorization Act of 2008 and asks the Court to award damages based on standard wage and hour violations under state and federal law. There are only two published cases reviewing these specific claims. This case presents issues not previously decided by any court. Motions to dismiss are "especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *Baker v. Cuomo* (2nd Cir. 1995) 58 F3d 814, 818–819.

## III.    DEFENDANTS' MOTION FAILS

### A.    The First Two Causes of Action for Forced Labor and Trafficking Into Servitude are Sufficiently Pled

#### 1.    Defendants Failed to Address § 1590 Claims

The first two causes of action are specific to remedies under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589, *et seq.* Defendants argue that Plaintiffs' first two causes of action for Forced Labor (18 U.S.C. §§ 1589 and 1595) and Trafficking Into Servitude (8 U.S.C. §§ 1590 and 1595) fail. First, the Court should disregard Defendants' attack on Plaintiffs' § 1590 claims; they are not specifically addressed in the 12(b)(6) Motion and seem to be improperly combined with § 1589.

Second, even if Defendants had specifically addressed § 1590 claims, their challenge would fail. A recent case, *Martinez v. Calimlim*, 651 F.Supp.2d 852 (E.D. Wisc. 2009) weighs in Plaintiffs' favor, where the court found that "defendants essentially enslaved her, i.e., forced her to work for them for little or no pay, concealed her presence in their home and severely curtailed her access to the outside world." *Id.*, at 856. These same facts have been alleged by both Plaintiffs (see Complaint, ¶¶ 17, 18, 20 – 22, 27 and 31). Contrary to Defendants' position, the court in *Martinez* (who was lured by the promise of work), did not find that an employment relationship was necessary to apply the TVPRA. Instead the court

6

focused on the plain language of 18 U.S.C. § 1590:

> To plead trafficking under § 1590, plaintiff must allege that the parent defendants (1) knowingly recruited, harbored, transported, provided or ***obtained a person for labor***; or obstructed enforcement of § 1590. To plead a violation of § 1589 prohibiting forced labor, plaintiff must allege that the parent ***defendants knowingly obtained the labor of another by means of force, serious harm, abuse of legal process, threats of such or by creating the belief that refusal to work will result in serious harm to them or another.***

*Id.*, at 859, (emphasis added.)

The court went on to find:

> "Section 1589 criminalizes knowingly obtaining the labor or services of another by a number of means, and § 1595 authorizes the victim of such an offense t***o bring a civil action against the victimizer***. Plaintiff alleges that defendants violated § 1589 by knowingly obtaining her labor by a variety of improper means and thus states a claim under § 1589."

*Id.*, at 864.

2.     Plaintiffs Have a Private Right of Action

Defendants boldly state that Plaintiffs must use criminal prosecution to redress wrongs they allege under TVPRA. To the contrary, TVPRA expressly provides civil remedies intended to act as a financial deterrent against traffickers.

In addition, to the language from *Martinez* (above), a very recent California case, *Hernandez v. Attisha* 2010 WL 816160 (S.D.Cal. 2010), is informative:

> When initially enacted, Section 1595 applied only to an individual who was "a victim of a violation of section 1589, 1590, or 1591 of this chapter." *See* 18 U.S.C. § 1595 (2006). This language, however, was amended by the Trafficking Victims Protection Reauthorization Act of 2008, which deleted the phrase "of section 1589, 1590, or 1591 of this chapter" after the words "victim of violation." Pub.L. No. 110-457, § 221, 122 Stat. 5044. By doing so, Congress in effect expanded the private right of action to any violation under Chapter 77 of Title 18, including violations of Sections 1584 and 1590.

*Id.*, at 2.

Defendants' argument that Plaintiffs' claims under these causes of action are "implausible" because there is no civil remedy is simply wrong.

Defendants argue that "the allegations are inherently implausible given the lack of any allegation that a complaint or report was made by Plaintiffs of the crime of human trafficking which carries a 20 year prison sentence." Defs. Motion 4:20-22. This is analogous to claiming that there is no victim of domestic violence unless a police report has been filed. Again, Defendants cite to no authority to support this position and simply wish for the Court to ignore the clear civil remedies under the statutes.

More recently in California, the court agreed with *Martinez*, again, finding application of the TVPRA, irrespective of any employment relationship. *Canal v. Dann* Slip Copy WL 3491136 (N.D. Cal. 2010). While the parties in that case initially entered into an employment relationship (i.e., an offer to hire was made), the court did not expressly state or imply that § 1589 and § 1590 claims are exclusively reserved for standard employment relationships, instead focusing on that fact that defendants obtained "labor or services" from the plaintiff.

18 U.S.C. 1589 (a) provides:

> Whoever knowingly provides or ***obtains the labor or services of a person by any one of, or by any combination of, the following means***--¶(1) by means of ***force***, threats of force, ***physical restraint***, or threats of physical restraint to that person or another person; ¶(2) by means of ***serious harm*** or threats of serious harm to that person or another person; ¶(3) by means of the ***abuse*** or threatened abuse of law or legal process; or ¶(4) by means of ***any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint***, shall be punished as provided under subsection (d)[1].

---

[1]  Subsection (d) provides criminal remedies including imprisonment and fines, but is entirely irrelevant to this complaint in light of the TVPRA (18 U.S.C. §1595) as explained above.

### 3. Plaintiffs' Specifically Pled the Elements of 18 U.S.C. 1589 (a)

Defendants' position is that these causes of action "does [sic] not plausibly set forth a claim for relief." Defendants appear to buttress this claim by asserting that the Complaint fails to 1) mention the services obtained from Plaintiffs; 2) identify a business in which the Defendants were engaged and 3) proof that the forced labor provided economic benefit. Without citing to any authority, Defendants apparently argue that Plaintiffs have failed to plead facts to support the elements required for a finding under §§1590. 1589 and 1595.

The TVPRA is not limited, as Defendants simply to argue, to employment relationships. In fact, as set forth above, a complaint is sufficient where facts showing "**any one of**" or "**any combination of**" acts performed knowingly to obtain labor are set out. The Complaint sets forth far more than the minimum. Prefatory to the factual means supporting the §1589 cause of action, the Complaint states that Defendants knowingly induced Plaintiffs to come to the USA and (by incorporation) to their property. ¶31. The next series of paragraphs alleges *facts* that demonstrate how Defendants violated the various subsections of §1589:

**Means of Force, threats of force, physical restraint, or threats of physical restraint to that person or another person;**

> ¶17: "Joe frequently yelled and screamed at both mother and daughter, cursing at them, using obscene and threatening language. He cursed at Liza, especially when he was dissatisfied with the heavy physical labor he had her doing hours every day, calling her 'dumb,' a 'stupid bitch,' a 'lazy ass,' and a 'fucking bitch.' He told Liza that she was too stupid to go to school and prevented her from going to school until mid September."

> ¶ 18: [Joe] said that he didn't want to pay money for food or heat Liza's bedroom. Natalya was forbidden to leave the house except to go with Joe to church. He forced her to perform heavy manual labor on his properly for hours daily.

> ¶ 19: Joe threatened both Plaintiffs by kicking at and throwing furniture, plates and cups at them; he kept guns and large knives displayed throughout the house, lying on tables and within easy

reach. He often grabbed weapons in his frequent bouts of rage, and threatened Natalya and Liza with imminent physical harm.

¶ 20: "Joe (with Dan's help) forced both Plaintiffs to engage in heavy, manual labor form the onset of their residency at the home. Natalya was actually locked out of the house for hours daily, forced to move around earth, large rocks and stones, remove bush and debris on the large, rural property. She was forced to do this work 8-10 hours a day or more, usually seven days per week. Joe would not allow Natalya to rest or drink water during this grueling work, Joe forced Liza to perform the same activities for hours each day, sometimes to the point of exhaustion.

¶ 21: [Joe] prevented Natalya from leaving the house during most of the 7 months that Plaintiffs lived with Defendants.

**By means of serious harm or threats of serious harm to that person or another person;**

¶ 18: "As things deteriorated, Joe started in with death threats against Natalya. He told Natalya that she would regret it if she told anyone on the outside what happened on his property. He told Liza that her mother would be sorry if Natalya failed to do as he wanted and later asked Liza to assist him in getting rid of her mother."

¶ 22: Joe threatened Plaintiffs with physical violence and death if they should disobey him or if they should tell anyone about what was going on inside the home. He enforced the threats by physical force, including grabbing and violently shaking Natalya, throwing crockery, kicking chairs, demonstrating and talking about firearms and large knives. ¶ 22: He told Natalya that he had people who would 'take care of' her if she should disobey him."

**By means of the abuse or threatened abuse of law or legal process;**

¶ 18: When Natalia complained that Joe was not providing her and her daughter with enough food to eat, Joe threatened to send Liza back to Russia.

¶ 22: He often bragged to Natalya that because he is a lawyer, he could easily manipulate the legal system, leaving her no recourse.

**By means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint**

¶ 18: When Natalya complained that Joe was not providing her and her daughter with enough food to eat, Joe threatened to send Liza back to Russia

¶ 22: Joe threatened Plaintiffs with physical violence and death if they should disobey him or if they should tell anyone about what

was going on inside the home.  He enforced the threats by physical force, including grabbing and violently shaking Natalya, throwing crockery, kicking chairs, demonstrating and talking about firearms and large knives.

Under the standards set forth above, Plaintiffs have plausibly set forth a claim for relief. Therefore, this Court should not grant Defendants' motion to dismiss with regard to the first cause of action.

**B.** **The Second Cause of Action for Trafficking Into Servitude and TVPRA Survives, States Facts Supporting a Cause of Action and Should Not be Dismissed**

The Court need not address the §12(b)(6) motion with regard to the second cause of action as it was not addressed in Defendants' motion.  While under 12(b)(6) "[a] count of a complaint may be dismissed for failure to state a claim …the burden to show the failure to state a claim rests with the moving party.  Nevertheless, Plaintiffs will briefly review their compliance with the pleading constraints of 18 U.S.C. § 1590 which provide, in relevant part:

> **(a)** Whoever knowingly recruits, harbors, transports, provides, *or obtains by any means, any person for labor or services* in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

18 U.S.C. § 1590 (emphasis added).

First, the facts alleged by Plaintiffs (and covered in the bullet points in section (3) above) in their § 1589 claims also support the "labor or services" elements of §1590.  The following briefly states some of the satisfaction of the *recruits*, *harbors*, or *transports*, as well as the *aggravated sexual abuse*, or the *attempt to commit aggravated sexual abuse* elements minimal pleading requirements in the Complaint:

> ¶13: "Joe promised to take care of Natalya and her daughter Liza (who was 16 at the time) and provide them with a loving home and a commitment to Natalya as his wife."

> ¶14: "Natalya agreed to the marriage and she and her daughter moved to the United States in reliance of these promises. She left her job, her home, her family – with the exception of her minor daughter – to live with Joe. Liza gave up her musical education

11

and career to come to the United States with her mother. Natalya used her savings to secure the necessary visas and travel documents to leave Russian and enter the U.S. The couple agreed that Natalya and Liza would come to the U.S. in February 2008 and live with Joe. "

¶15: "Within weeks of moving in, Joe began a campaign of physical and verbal threats, aggressive behavior and psychological torture directed at both Plaintiffs, keeping and treating them as virtual slaves."

¶20: "Joe (with Dan's help) forced both Plaintiffs to engage in heavy, manual labor from the onset of their residency at the home. Natalya was actually locked out of the house for hours daily, forced to move around earth, large rocks and stones, remove brush and debris on the large, rural property. She was forced to do this work 8 – 10 hours a day or more, usually seven days per week. Joe would not allow Natalya to rest or drink water during this grueling work. Joe forced Liza to perform the same activities for at hours each day, sometimes to the point of exhaustion"

¶21: Joe controlled all outside contact that Natalya and Liza had with the outside world. He prevented Natalya and Liza from leaving the house during most of the 7 months that Plaintiffs lived with Defendants. Natalya was usually allowed to leave only when accompanied by Joe, to attend church. Joe prevented Liza from leaving the home at any time, until July, 2008 and greatly restricted her movements off the property even after that time. No one was allowed to visit for months after Natalya and Liza moved in. Defendants intercepted or blocked emails and internet access and prohibited Plaintiffs from using the phone. Joe refused to allow Liza to attend school until weeks before Plaintiffs escaped, despite the fact that she had excelled musically and academically in Russia. Joe repeatedly threatened Natalya that she would "regret it" if she ever disclosed to anyone what occurred in the home.

¶22: As things worsened, Joe threatened Plaintiffs with physical violence and death if they should disobey him or if they should tell anyone about what was going on inside the home. He enforced these threats by physical force, including grabbing and violently shaking Natalya, throwing crockery, kicking chairs, demonstrating and talking about firearms and large knives. He told Natalya that he had people that would come after her and take care of her if she left, and told Liza that he wanted to "get rid of" her mother. These remarks were made in the context of Joe frequent tirades and the Plaintiffs interpreted them as a death threats.

¶23: Joe, against Natalya's protestations, forced Liza to massage his naked body for hours, in his bedroom behind closed (and often, locked) doors, several times a week. He would force her to straddle his naked body and suggested that Liza remove her clothing. During these massages, Joe often told Liza that she should feel comfortable walking around the house naked. Natalya was often locked out of the house during these sessions.

12

¶24: Joe routinely asked Liza about her supposed sex life both with a boyfriend she had back home and with a boy she talked about, in Clearlake. He talked explicitly about sex with her, asking about her experiences with sexual intercourse and oral sex. Liza told him that she did not want to discuss such things with him and that it made her feel very uncomfortable.

¶26: Dan, Joe's 35-year old son, lived at the house during the weekends. He is a very large man who claims to weigh 400 pounds and is well-over six feet tall. He routinely grabbed at and touched Liza's crotch, buttocks and breasts and made sexual references about her body. He frequently grabbed her from behind and lifted her, often forcing her to sit on his lap and restricted her movements. He forcibly kissed her and fondled her, told her that he was a virgin and that she could "please" him a lot and he wanted to be her boyfriend. On numerous occasions, Dan burst into Liza's bedroom while she was in the middle of dressing. He stood and stared at her in her underwear and would not leave. At other times, he came into the bathroom while she was showering. When Liza protested these invasions, Dan said it was "no big deal" because they were now family.

¶27: Dan's physical presence at the property was a constant reminder of the Plaintiffs' powerlessness to escape, have privacy or even physical safety.

¶31: Joe knowingly induced Natalya and Liza to come to the United States with promises of marriage and a loving family, instead physically, emotionally and psychologically abusing Plaintiffs over more than seven months of virtual slavery. Both Joe and Dan engaged in a pattern of emotional, physical and psychological threats and acts to force Plaintiffs to stay at Joe's property and comply with their demands.

¶32: Both Defendants knowingly obtained Plaintiffs' services, by their scheme, plan or pattern intended to cause Natalya and Liza to believe that, if they did not perform the labor or sexual services Defendants demanded, they would suffer serious harm, physical restraint, deportation and even death.

Under the standards set forth above, Plaintiffs have plausibly set forth a claim for relief. Therefore, this Court should not grant Defendants' motion to dismiss with regard to the first and second causes of action.

**C.** **Plaintiffs More Than Meet The Pleading Requirements For Their Fifth, Twelfth, Thirteenth, Fifteenth and Sixteenth Causes of Action**

Plaintiffs' fifth (fraud), twelfth (intentional fraud), thirteenth (negligent

13

misrepresentation), fifteenth (breach of oral contract) and sixteenth (breach of covenant of good faith and fair dealing) causes of action have been sufficiently pleaded. All of these causes of action are supported by some or all of the same allegations in the Complaint.

A motion to dismiss for failure to state a claim must be viewed in conjunction with and balanced against the general rules of pleading; on the one hand, a motion to dismiss for failure to state a claim should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief; on the other hand, under the general rules of pleading, a complaint need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. *Jordan v. Western Distributing Co.*, 286 F.Supp.2d 545 (D.Md.2003), *aff'd* 135 Fed.Appx. 582, 2005 WL 1009642.

1.  Elevated Burden for Fraud Claims: Particularity

Unlike more general causes of action, F.R.C.P. 9(b) requires that cause of action for Fraud must state "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1393 (9th Cir.1988). This "particularity" pleading requirement exists "in order to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (superseded by statute on other grounds). However, Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge ... [and] the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded." *Albergo v. Immunosyn Corp.* 2010 WL 3339398, 3 (S.D.Cal. 2010) citing *Moore v. Kayport Package Express,* 885 F.2d 531, 540 (9th Cir.1989). "A

pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken,* 6 F.3d 666, 671-672 (9th Cir.1993).

The elements of a fraud claim are "(1) a misrepresentation, (2) knowledge of falsity (or scienter), (3) intent to defraud, i.e. to induce reliance, (4) justifiable reliance, and (5) resulting damage." *Spurlock v. Carrington Mortg. Services, Inc.* 2010 WL 3069733, 1 -7 (S.D.Cal. 2010) (citing *In re Estate of Young,* 160 Cal.App.4th 62, 79, 72 Cal.Rptr.3d 520 (2008)).

Federal Rules of Civil Procedure, Rule 9 requires that circumstances constituting fraud be stated with particularity. F.R.C.P. Rule 9. This "particularity" however, must be reconciled with this rule which requires a short and concise statement of claims. *Felton v. Walston & Co., Inc.*, 508 F.2d 577 (C.A.2 (N.Y.) 1974). See, also, *In re Nat. Student Marketing Litigation*, 413 F.Supp. 1156 (D.C.D.C.1976); *Future Tech Intern., Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538 (S.D.Fla.1996); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 814 F.Supp. 720 (N.D.Ill.1993).

Regardless of the level of particularity needed, Plaintiffs have ample specifics to satisfy this requirement. The specific factual allegations in Plaintiffs' complaint include the following:

**Time:**

> ¶12: Marriage proposal on October 25, 2005.
>
> ¶14-15: Leaving Russia and home, acting in reliance on promises and representations.
>
> ¶16: Falsity of promises discovered "within weeks" after arrival in February 2005.
>
> ¶17: Joe prevented Liza from leaving the house until approximately July 2008;
>
> ¶28: Plaintiffs' ordeal ended only when they were able to sneak off the property on September 27, 2008 and with the assistance of friends, escape to a Sonoma County women's shelter. They have been forced to live in fear in a woman's shelter ever since their escape.

¶31: Over more than seven months of virtual slavery;

¶48: Plaintiffs' false imprisonment ended on or about September, 27, 2008, by physically fleeing the property.

¶92: "Joe knowingly made false representations to Natalya in or about October 2005."

**Place:**

¶2 "Defendants Joseph Cunningham (Joe) and Daniel Cunningham (Dan), his middle-aged son, knowingly and willfully conspired to lure Natalya to bring her minor daughter, Liza, from their home in Russia, with false promises of joining a loving and supportive family through marriage. Joe spent two years "wooing" Natalya, visiting her and her daughter in Europe on multiple occasions and proposed marriage. Once on Joe's isolated, rural property in Lake County Joe began a campaign of abuse and terror … Defendants' fraudulently induced Plaintiffs to move from their home in Russia, to be forced into involuntary servitude.

¶12: They vacationed together in Poland

¶14: she and her daughter moved to the United States in reliance of these promises…The couple agreed that Natalya and Liza would come to the U.S. in February 2008 and live with Joe.

¶15: Plaintiffs arrived in California in February 2008 and immediately moved in to 2830 Mediros Lane, Clearlake, California; Dan lived at the property off and on;

¶17: [Joe] prevented Liza from leaving the house until approximately July 2008;

¶21: He prevented Natalya and Liza from leaving the house during most of the 7 months that Plaintiffs lived with Defendants.

¶23: Joe, against Natalya's protestations, forced Liza to massage his naked body for hours, in his bedroom behind closed (and often, locked) doors, several times a week.

¶26: On numerous occasions, Dan burst into Liza's bedroom while she was in the middle of dressing…he came into the bathroom while she was showering.

¶27: Dan's physical presence at the property was a constant reminder of the Plaintiffs' powerlessness to escape, have privacy or even physical safety.

¶45: Joe removed or prevented Natalya from entering the house and kept her away from her daughter by locking her out of the bedroom or house.

**Specific content of false representations:**

¶2 false promises of joining a loving and supportive family through marriage.

¶12 Joe discussed marriage and lifetime commitment with Natalya and proposed to her in October 2005.

¶13: Joe promised to take care of Natalya and her daughter Liza (who was 16 at the time) and provide them with a loving home and a commitment to Natalya as his wife.

¶31: Joe knowingly induced Natalya and Liza to come to the United States with promises of marriage and a loving family;

¶51: Joe and his agents intentionally and /or negligently made representations of material fact in telling Natalya that he would provide a loving, supportive home for her and her daughter. Plaintiffs reasonably believed these representations and uprooted their home in Russia and immigrated to the United States. These representations were in fact false. The truth was that Joe wanted Plaintiffs to come to the United States to serve as virtual slaves. When Joe made the representations, he knew they were false and/or had no reasonable ground for believing that the presentations were true. He made the representations with the intent to defraud and induce Plaintiffs to come to the United States. At the time Plaintiffs acted, Plaintiffs did not know the representations were false and believed they were true. Plaintiffs acted in justifiable reliance upon the truth of the representations.

¶92: Joe knowingly made false representations to Natalya in or about October 2005 about the circumstances and the lawfulness of her emigration to the United States, including, but not limited to, falsely informing Natalya and her daughter that they would be cared for in a loving and safe relationship.

¶99: Joe made false representations to Plaintiffs in October 2005 about their circumstances and the lawfulness of Plaintiffs; emigration to the United States, including, but not limited to, falsely informing Plaintiffs that they would be properly cared for in a loving and supporting family, in accordance with the laws of the United States. Both Defendants continued the negligent misrepresentation throughout the course of the Plaintiffs' ordeal, under physical and emotional threat and duress and lawful authority.

## Parties to the Misrepresentations:

There are only two defendants in this matter, Joe and Dan Cunningham. Each are referred to as to specific facts and allegations, in specific causes of action, throughout the complaint. (See above).

**D. Plaintiffs' State & Federal Labor Claims Easily Survive This Motion**

Natalya has asserted more than sufficient facts to show 1) that Joe's offer of marriage was a fraud and that Defendants conspired to obtain "labor and services" – from Plaintiffs – for free and without regard to Plaintiffs' rights. Because of Defendants' fraud, Plaintiffs should be compensated under §1590, as the plaintiff was treated in *Canal* and *Hernandez*.

1. FLSA Claims

Defendants argue that the Fair Labor Standards Act (FLSA 29 U.S.C. § 200 *et seq*.) does not apply, claiming in their lengthy, albeit erroneous, argument that FLSA only applies to situations involving "commerce" Defs. Motion 5:2, 5:11-12, 5:14-15. This analysis continues with the argument that FLSA does not apply in this case because there is no "employment" relationship.

The facts as presented in this case do not demonstrate the classic employer-employee relationship. However, Defendants' argument is simplistic and ignores clearly established law. "Employee" has been clearly defined under FLSA: "'Employ includes to suffer or permit to work.'" 29 U.S.C. § 203(g). FLSA expressly covers "domestic workers" who are defined in the Code of Federal Regulations (C.F.R.) sections below:

> As used in section 13(a)(15) of the Act, the term domestic service employment refers to services of a household nature performed by an employee ***in or about a private home*** (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3

The Code of Federal Regulations describes "domestic service employment" as "private household workers" and requires that the "… domestic service must be performed in or about the private home of the employer whether that home is a fixed place of abode or a temporary

dwelling as in the case of an individual or family traveling on vacation. 29 C.F.R. § 552.101    It "Yard maintenance workers" states:

> Persons who mow lawns and perform other yard work in a neighborhood community generally provide their own equipment, set their own work schedule and occasionally hire other individuals. Such persons will be recognized as independent contractors who are not covered by the Act as domestic service employees. ***On the other hand, gardeners and yardmen employed primarily by one household are not usually independent contractors.***

29 C.F.R. § 552.107 (emphasis added).  Defendants' motion does admit "It is an allegation of yard work."  See Defs. Motion 5:21.

While not addressed in the federal labor claims, Defendants base some of their motion on the "family" and that whatever "household chores" were done by Natalya were done for the benefit of the "family."  The Complaint contains ample allegations to demonstrate that Natalya was 1) not in a true familial relationship with Joe because of the fraudulent way in which he induced her into marriage and 2) that she did not benefit from her labor, the threats that Joe and Dan made, the deliberate attempts to physically separate Natalya and her daughter, and actions to prevent Natalya from protecting her daughter, among other things.  In addition, Defendants do not address Liza's employment claims in any portion of either the state or federal causes of action.

2.    California Labor Code Claims

California law is identical to federal law in defining "employ" "… to engage, suffer, or permit to work."  Industrial Welfare Commission (IWC) Order No. 15-2001.  This same order regulates "household occupations" and is essentially identical to the FLSA definition:

> 'Household Occupations' means all services related to the care of persons or maintenance of a private household or its premises by an employee of a private householder.  Said occupations shall

19

include but not be limited to the following: butlers, chauffeurs, companions, cooks, day workers, gardeners, graduate nurses, grooms, house cleaners, housekeepers, maids, practical nurses, tutors, valets, and other similar occupations.

IWC Order 15-2001(2)(I).

On September 2, 2010, the Northern District Court of California in *Canal v. Dann* Slip Copy WL 3491136 (N.D. Cal. 2010) found that defendants violated 18 U.S.C. § 1589, 1590, FLSA, the California Labor Code and related IWC Orders, as well as fraudulent misrepresentation, negligent misrepresentation, breach of contract and breach of the implied covenant of good faith and fair dealing.

      3.     <u>"Economic Reality" Test Does Not Apply</u>

Defendants are correct when they describe an "economic reality" test (Defs. Motion, 6:20 – 7:4), but only insofar as it applies to independent contractors. This test, and the cases cited do nothing to contradict Plaintiffs' employment arguments, above, and are irrelevant to this motion.

**E.**    <u>**Defendants' Motion Does Not Address Plaintiffs' Causes Of Action 3, 4, 6, 14, 17 Or 18 And Should Not Be Considered As Part Of Their Motion**</u>

In Defendants' prefatory paragraph of their motion they request "… an Order dismissing causes three (3) through eighteen (18) of the complaint in this matter without leave to amend." Defs. Motion 1:22-23. The Court should ignore this and look to the specific causes of action that were actually raised and to which legal argument was given. Their motion *excluded* the following causes of action:

- Third Cause of Action: Invasion of Privacy

- Fourth Cause of Action: False Imprisonment

- Sixth Cause of Action: Assault & Battery

- Fourteenth Cause of Action: Conspiracy

- Seventeenth Cause of Action: Intentional Infliction of Emotional Distress

20

- Eighteenth Cause of Action: Negligent Infliction of Emotional Distress

Plaintiffs nonetheless meet their pleading requirements for these causes of action as well. In addition to the grossly inappropriate sexual actions taken by Defendants, (spelled out in paragraphs 23, 24, 26, and 27 of the Complaint and addressed in III.B., above), some of the key points are:

> ¶ 43: All Defendants violated Plaintiffs' personal privacy by acting in a manner which had the effect of putting Plaintiffs in such close proximity of the Defendants at all times, including all non-work hours, as to eliminate Plaintiffs' personal privacy by effectively disallowing it. Defendants limited Plaintiffs communications with and without their knowledge and/or consent, restricted Plaintiffs' access to the phone, internet and email; prevented or greatly restricted access to friends and the outside world; intruded into Plaintiff s' bedroom and bathroom while showering and in a state of undress. (3rd, 4th, 6th and 14th Causes of Action.)

> ¶ 44: Dan barged into Liza's bedroom and bathroom knowing that she was in a state of undress or nudity. He physically restrained Liza and groped and pawed at her body. He acted in concert with Joe to keep Natalya and her daughter physically isolated from each other and normal contact with the outside world. (3th, 6th, 17th, and 18th Causes of Action.)

With regard to the fourth cause of action for False Imprisonment, in concert with the rest of the incorporated allegations from other portions of the complaint, at ¶ 48, Plaintiffs allege that Defendants' actions:

- had the effect of confining [Plaintiffs] against their will and limiting their contact with anyone from the outside world;

- Significantly limited Plaintiffs' contact with family and other support networks;

- Defendants accomplished this constraint and restraint through the negligent and intentional use of physical force, economic force, express and implied threats of physical force, fraud, legal action and even death, and by acting in a manner which had the effect of threatening harm to Plaintiffs if they attempted to escape. Defendants further accomplished this by keeping Mother from Daughter, and threats of deportation.

- Defendants had no privilege, permission or consent to retrain, continue

21

and detain Plaintiffs.

Combined with the rest of the Complaint, and read in a light most favorable to Plaintiffs, there is no question that Plaintiffs have adequately stated causes of action for invasion of privacy, false imprisonment and assault and battery.

The unchallenged seventeenth and eighteenth causes of action are for negligent and intentional infliction of emotional distress as to all of the previous causes of action. The facts to support these causes of action are set out specifically under the individual causes of action and incorporated into their damage claims.

## IV. REQUEST FOR LEAVE TO AMEND

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir.1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. *Id*. at 296-97.

Plaintiffs request, that in the event that the Court grants Defendants' Motion, the Court grants Plaintiffs leave to amend the Complaint.

## V. CONCLUSION

Defendants' motion is simply a delaying tactic. Six out of the eighteen causes of action were not addressed; the TVPRA § 1590 claims were not addressed; and Defendants made no attempt to explain how the labor claims brought on behalf of Liza (a minor at the time) would fail. Defendants have misled the court as to the actual legal authority for FLSA and California

1    employment rights and protections.  Their arguments that facts were not sufficiently pleaded are

2    wholly without merit.

3        Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.  In

4    the alternative, they ask that the Court grant leave to amend as to those causes of action the

5    Court considers insufficient.

7    DATED:  September 10, 2010                    PALANDATI – GOLDSTONE LLP

9                                              __/S/    **Nancy A. Palandati**
10                                             Nancy A. Palandati
11                                             Attorneys for Plaintiffs

23

# CERTIFICATE OF SERVICE

I am a citizen of the United States. My business address is 703 Second Street, Suite 411, Santa Rosa, California, 95404. I am employed in the county of Sonoma where this service occurs. I am over the age of 18 years and not a party to the within cause.

On September 10, 2010, I served the following documents(s) described as:

1.   PLAINTIFFS' OPPOSITON TO MOTION TO DISMISS
     Pursuant to Fed. R. Civ. P. 12(B)(6),

on the party(ies) listed below, addressed as follows:

Dow W. Patten
The Law Offices of Spencer Smith
353 Sacramento Street, Suite 1120
San Francisco, CA 94111

I also caused to be sent by US Mail a copy to be lodged with the
**By E-filing pursuant to the rules of the above-entitled court.**

AND BY PLACING A COPY IN THE US MAIL To Dow W. Patten and to:

The Honorable Richard Seeborg
Northern District of California
Courtroom 3, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 10, 2010, at Santa Rosa, California.

/S *Peter Goldstone*
_____
Peter Goldstone