**\*E-Filed 12/22/2010\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALYA SHUVALOVA and ELIZABETH SHUVALOVA,<br><br>           Plaintiffs,<br>    v.<br><br>JOSEPH RICHARD CUNNINGHAM, DANIEL CUNNINGHAM, and DOES 1-10, inclusive,<br><br>           Defendants. | Case No. C 10-02159 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

I.  INTRODUCTION

   This case involves the unusual scenario of one spouse bringing claims against the other for alleged violations of the Trafficking Victims Protection Reauthorization Act (TVPRA). Natalya Shuvalova (Natalya) and her daughter Elizabeth Shuvalova (Liza) (collectively "plaintiffs") claim that Joseph Cunningham (Joe) and his adult son Daniel Cunningham (Dan) (collectively "defendants") fraudulently lured them from Russia to the United States, induced Natalya to marry Joe, and then forced plaintiffs into involuntary servitude at Joe's rural property in Clearlake, California.  For seven months, plaintiffs claim they were forced by defendants' alleged verbal and physical threats to perform heavy, outdoor labor on the property.  Based on these contentions, plaintiffs' complaint raises eighteen claims for violations of the TVPRA, federal and state labor law,

and state contract and tort law. Defendants move to dismiss the entire complaint under Rule 12(b)(6) for failure to state a claim. The Court heard oral argument on the motion on October 14, 2010. For the reasons stated below, defendants' motion is granted in part and denied in part.

## II. BACKGROUND

Accepting the facts as presented in the complaint for purposes of this motion, Natalya and Joe met through a computer dating service in October 2005. At the time, Natalya lived in Russia and Joe lived then and now in Clearlake, California. They began a two-year relationship involving frequent emails and phone calls, as well as two vacations together each lasting two weeks. In October 2005,[1] Joe proposed to Natalya and promised to provide a loving home to her and her daughter Liza. Natalya and Liza arrived in the United States in February 2008 and began living with Joe at the Clearlake property. Joe's thirty-five-year-old son, Dan, also lived at the house on the weekends. Natalya and Joe married on May 3, 2008.

According to the complaint, Joe began physically and verbally threatening both Natalya and Liza within weeks of their arrival. Joe threatened Natalya with serious physical harm including death. He asked Liza to help him "[get] rid of her mother." Joe threw furniture, plates, and cups at plaintiffs. He kept guns and large knives around the house, often grabbed them during his bouts of rage, and threatened plaintiffs with physical violence if they disobeyed him or told anyone about their situation. He enforced his threats by grabbing and violently shaking Natalya.

Plaintiffs were forced by Joe, with Dan's help, to engage in heavy, manual labor on the rural property. Natalya was locked out of the house and made "to move around earth, large rocks and stones, [and] remove brush and debris." Natalya was forced to labor for eight to ten hours a day or more, usually seven days per week. She was not allowed to rest or drink water. Joe also forced Liza to engage in the same work for hours each day.

Joe isolated plaintiffs from outside contact. He prevented them from leaving the house for most of the seven months they lived with him. Usually Natalya could only leave with Joe to attend

---

[1] Although the complaint states that Joe and Natalya met in October 2005 and developed their relationship over a two-year period, it also states that Joe proposed in October 2005. The October 2005 date is repeated in the complaint, for example, as the date Joe made fraudulent statements to induce plaintiffs' immigration to the United States.

church and Liza could not leave the house at all until July 2008. Liza was not allowed to attend school until mid-September 2008. Additionally, defendants prevented plaintiffs from having Internet or phone access.

Joe forced Liza to massage his naked body several times a week. He routinely talked to Liza explicitly about sex, even though she told him it made her uncomfortable. Joe also prevented Liza from receiving treatment for an ear infection until it developed into an emergency. Instead, he physically restrained her in order to force a homemade treatment into her ear. Dan also forced Liza to engage in unwanted physical contact and made sexual references about her body. He routinely grabbed, forcibly kissed, and fondled her. He would come into Liza's bedroom and remain without her consent while she was dressing and would enter the bathroom while she was showering. In September 2007, after seven months, plaintiffs were able to escape Joe's property and move to a shelter in Sonoma County.

Based on defendants' alleged conduct, plaintiffs bring eighteen claims for damages under: (1) the TVPRA, 18 U.S.C. §§ 1589, 1595; (2) the TVPRA, 18 U.S.C. §§ 1590, 1595; (3) invasion of privacy; (4) false imprisonment; (5) fraud; (6) assault and battery; (7) the Fair Labor Standards Act (FLSA); (8) California Labor Code § 1197; (9) California Labor Code §§ 203, 204; (10) California Labor Code §§ 551, 552 and California Code of Regulations § 11150; (11) California Labor Code § 970; (12) intentional fraud; (13) negligent misrepresentation; (14) conspiracy; (15) breach of oral contract; (16) breach of the covenant of good faith and fair dealing; (17) intentional infliction of emotional distress; and (18) negligent infliction of emotional distress. Defendants move to dismiss all eighteen claims[2] for failure to state a claim upon which relief can be granted.

### III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must present "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). If the complaint does not meet this standard, the defendant may move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if the

---

[2] On page one of their motion, defendants state that they move to dismiss claims three through eighteen. Nonetheless, they also advance arguments against the TVPRA claims, which are claims one and two.

claimant either does not raise a cognizable legal theory or fails to allege sufficient facts to support a cognizable claim. *See* Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While a legally sufficient complaint does not require "detailed factual allegations," it must contain more than "unadorned" assertions of harm or bare legal conclusions without factual support. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a complaint must state a "plausible claim for relief" to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. In evaluating a Rule 12(b)(6) motion to dismiss, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Furthermore, Federal Rule of Civil Procedure 9(b) requires that "[in] allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must plead the "who, what, where, when, and how" of the claimed misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Defendants must be provided notice of "particular misconduct," such that they may "defend against the charge" beyond a general denial of wrongdoing. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted).

## IV. DISCUSSION

A.  TVPRA

Plaintiffs' first two claims allege violations of the forced labor and trafficking provisions of the TVPRA.[3] *See* 18 U.S.C. §§ 1589, 1590. In claim one, they contend that Joe and Dan obtained their services, in particular manual labor on the property, in violation of the TVPRA. Section 1589(a) proscribes a party from knowingly providing or obtaining the labor or services of a person through force, physical restraint, serious harm to that person or another person, abuse of law or legal process, or threat of any of those means. Section 1589(b) provides liability for one who knowingly obtains financial benefit from the provision of such labor.

---

[3] Although the TVPRA is a criminal statute, section 1595 provides a private right of action under the Act. *See* 18 U.S.C. § 1595 ("An individual who is a victim of a violation of this chapter . . . . may bring a civil action . . . and recover damages and reasonable attorney's fees.").

No. C 10-02159 RS
ORDER GRANTING IN PART MOTION TO DISMISS
4

Defendants move to dismiss the claim on the grounds that plaintiffs fail to allege they obtained any "services," with respect to any "purported business" for any "economic goals." Instead, they argue that plaintiffs' pleading establishes nothing more than that "common household chores" were performed. The complaint, however, includes allegations that both Natalya and Liza were forced to engage in "heavy, manual labor" for hours a day. Moreover, in their Reply to plaintiffs' Opposition, defendants apparently accept that household labor falls within the scope of the TVPRA, where a victim has been "promised compensation in exchange for promised labor." According to defendants, because they never offered compensation as a reason for coming to the United States, plaintiffs fail to state a claim for forced labor under the TVPRA. There is no requirement under the statute, however, that a victim of forced labor be lured into the situation by a promise of employment. The statute merely proscribes knowingly providing or obtaining labor by force or threat of serious harm. While defendants complain that plaintiffs have not cited any case applying the TVPRA to married parties, there is no basis for the proposition that marriage eliminates a tort claim, including one under the TVPRA. In this case, both Natalya and Liza aver that they were confined to Joe's property and made to work through threat of serious harm. Thus, plaintiffs have alleged sufficient facts to state a claim for forced labor against Joe.

With respect to Dan, however, plaintiffs' factual allegations are insufficient to state a section 1589 claim. According to the complaint, Joe forced plaintiffs to engage in heavy, manual labor "with Dan's help." Plaintiffs describe Dan as a "very large man" and argue that his "physical presence" reminded them that they could not escape. In claim one, plaintiffs aver that both defendants knowingly obtained services by force, threats, and intimidation. The complaint, however, does not describe any acts by Dan beyond the general assertion that Joe engaged Dan's help. Thus, plaintiffs' section 1589 claim against Dan is dismissed with leave to amend.

Plaintiffs' second claim alleges violation of the trafficking section of the TVPRA. Section 1590 establishes penalties for one who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." § 1590(a). In this case, plaintiffs contend that Joe "promised to take care of" them in a "loving home" with Natalya as his wife. While plaintiffs assert that Joe fraudulently induced them to immigrate to the United States,

without more, the alleged misstatement is insufficient to state a claim for trafficking. Aside from this conduct, the remaining allegations are directed to defendants' conduct once plaintiffs had arrived at the property. In claim two, plaintiffs incorporate all factual allegations from claim one and conclusorily assert that "defendants knowingly recruited, harbored, transported, provided, and obtained" both Natalya and Liza for labor and sexual services. As pled, plaintiffs have not stated a distinct claim for trafficking, as opposed to forced labor. Therefore, claim two is dismissed with leave to amend.

B. FLSA

In claim seven, plaintiffs allege that defendants violated the FLSA. In particular, they claim they were denied minimum wage as required by law. *See* 29 U.S.C. § 206(a) (establishing the minimum wage to be paid by "[e]very employer" to each of his "employees" engaged in commerce.) Although plaintiffs contend that they were "employed," they also admit in their Opposition that "the facts of this case do not demonstrate the classic employer-employee relationship." Instead, plaintiffs allege that Joe was an "employer" under the FLSA and California Labor Code because of the "fraudulent nature of [p]laintiffs' living at [the Clearlake] property." Additionally, plaintiffs argue that they meet the "standards" of the TVPRA and therefore urge the Court to "award damages based on standard wage and hour violations under state and federal law." Thus, while plaintiffs plead a separate FLSA claim, their complaint raises two distinct issues: (1) whether the FLSA provides a measure of damages for TVPRA violations; and (2) whether plaintiffs can maintain a FLSA claim independent of their causes of action under that statute.

On the first issue, section 1593 of the TVPRA expressly provides that victims shall be compensated, at a minimum, for the value of their services and labor "as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(3). Accordingly, courts have relied on the FLSA's provisions to calculate restitution for TVPRA violations. *See*, *e.g.*, *United States v. Sabhnani*, 599 F.3d 215, 254-57 (2d Cir. 2010) (reviewing district court's calculation of award after criminal conviction under the TVPRA). In a recent decision, relied on by plaintiffs, the court entered default judgment against the defendant on numerous claims including those for TVPRA, FLSA, and California Labor Code violations. *Peña*

*Canal v. de la Rosa Dann*, No. 09-03366 CW, 2010 U.S. Dist. LEXIS 97856 (N.D. Cal. Sept. 2, 2010). The court's award of compensatory damages included the value of the plaintiff's wages, including applicable penalties available under the California Labor Code. *Id.* at *10. While the court entered default judgment on both the TVPRA and labor code claims, it declined the plaintiff's separate request for an equal amount as restitution, stating that it would constitute a double award. *Id.* In similar fashion, plaintiffs in this case may rely on the FLSA as a measure of damages for the alleged TVPRA violations.

On the second issue, to the extent plaintiffs seek to maintain an FLSA claim independent of their forced labor allegations, they fail to state a claim.[4] Plaintiffs contend that Joe was an "employer" because he fraudulently lured them into living at the Clearlake property. Although Joe and Natalya married, plaintiffs argue in their Opposition that she and her daughter were "not in a true familial relationship with Joe," because of this fraud. Thus, plaintiffs apparently seek application of the FLSA based on whether labor was "truly" performed for the family or not. Plaintiffs advance no authority, however, for the proposition that fraud is a sufficient basis for finding an employer-employee relationship among household members under the FLSA.

In the end, plaintiffs' putative FLSA claim appears grounded on allegations of forced labor. For example, plaintiffs argue that they fall under the definition of domestic service employee, because they labored, not for any "family" benefit, but involuntarily as a result of threats by Joe and Dan. Where their claim is based on allegations of forced labor, they may state it directly under the TVPRA. To the extent claim seven alleges violation of the FLSA based on the contention that plaintiffs were fraudulently induced into a family relationship, the claim is dismissed without leave to amend.

---

[4] Defendants again argue that plaintiffs' allegations merely describe "household chores and yard work," not "commerce" as encompassed by the FLSA. It is not the nature of the work, however, that takes plaintiffs' claim outside the FLSA. The Act specifically provides that "domestic service in a household" is subject to the minimum wage provisions. *See* 29 U.S.C. § 206(f).

C.  California Labor Code

Plaintiffs allege multiple claims arising under the California Labor Code including: failure to pay minimum wage and overtime (claim eight); failure to pay wages on time (claim nine); failure to provide days of rest (claim ten); and knowingly false representations made to induce plaintiffs to move to California for employment (claim eleven). These claims and those discussed above under the FLSA raise similar issues. In their Opposition, plaintiffs argue that California law "is identical to federal law" in its definition of "employ" and is "essentially identical" in its recognition of "household occupations" as encompassed by the California Labor Code. As before, the problem is that plaintiffs fail to advance a theory for finding an employer-employee relationship between household members on the grounds that Natalya was induced to enter the marriage fraudulently. In short, the California Labor Code may provide a basis for calculating the value of plaintiffs' labor under their TVPRA claims. As independent claims, however, claims eight through eleven must be dismissed without leave to amend.

D.  Fraud and Misrepresentation

Plaintiffs bring three separate claims for fraud and misrepresentation involving statements allegedly made either by Joe or by both defendants on which plaintiffs contend they relied in deciding to immigrate to the United States. In their fifth claim, plaintiffs allege fraud against Joe for intentional and/or negligent misrepresentation "in telling Natalya that he would provide a loving, supportive home for her and her daughter." In claim twelve, plaintiffs aver intentional fraud against Joe for knowingly false representations including telling plaintiffs "they would be cared for in a loving and safe relationship." Plaintiffs' thirteenth claim raises negligent misrepresentation against all defendants for statements including that "they would be properly cared for in a loving and supporting family, in accordance with the laws of the United States."

In California, a plaintiff averring fraud must plead five elements: (1) a false statement; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). In claim five, plaintiffs allege that Joe made statements he knew were false and/or lacked reasonable grounds for believing them to be true. Since the defendant's knowledge of falsity is an element of fraud, no

claim for "negligent" fraud exists. Thus, in that claims five and twelve represent the same fraud claim against Joe, claim five is dismissed without leave to amend as duplicative.

Unlike fraud, a claim for misrepresentation may be based on a statement that the defendant may not know to be false but has no reasonable grounds for believing to be true. *See Lincoln Alameda Creek v. Cooper Indus.*, 829 F. Supp. 325, 330 (N.D. Cal. 1992) (citing *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986)). The misrepresentation, however, must relate to a statement of "past or existing material fact." *Id.* In other words, promises of future conduct, such as providing a loving home, do not give rise to a misrepresentation claim. Plaintiffs also aver generally that defendants continued to make negligent misrepresentations "throughout the course of [their] ordeal." Their only allegation of reliance, however, is that defendants' misrepresentations affected their earlier decision to leave their home country. Therefore, claim thirteen is dismissed with leave to amend.

The remaining question is whether plaintiffs' complaint properly states a fraud claim against Joe. In claim twelve, plaintiffs contend that Joe made fraudulent statements to Natalya "in or about October 2005 about the circumstances and the lawfulness of her emigration [sic] to the United States." The statements included telling Natalya and Liza that they would be cared for in a loving relationship. According to plaintiffs, these representations were made by Joe as part of a fraudulent scheme to exploit their labor. Pursuant to Rule 9(b), plaintiffs must aver circumstances of the alleged fraud with particularity. Even under Rule 8, whether plaintiffs' allegations are sufficient to state a claim is a context-specific inquiry. *See Iqbal*, 129 S. Ct. at 150. According to the complaint, in the time after the alleged fraudulent statements, Joe and Natalya engaged in a phone and email relationship over two years, vacationed together, and married each other in 2008. As discussed above, plaintiffs' complaint includes sufficient allegations to state a claim that Joe forced them to engage in labor on his property in 2008. Those contentions alone, however, do not support the inference that statements by Joe in 2005 were made with the intent to obtain forced labor. Thus, plaintiffs' claim fifteen for fraud is dismissed with leave to amend.

E.  Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

In claim fifteen, plaintiffs allege breach of oral contract against all defendants and in claim sixteen they contend that Joe breached the covenant of good faith and fair dealing. As a threshold matter, plaintiffs must plead the existence of a contract. In California, the essential elements of a contract are: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient consideration. Cal. Civ. Code § 1550. Consent to enter a contract requires the parties' mutual assent to "a sufficiently definite set of terms to constitute an enforceable contract." *Netbula, LLC v. Bindview Development Corp.*, 516 F. Supp 2d 1137 (N.D. Cal. 2007). In this case, plaintiffs' only contention apparently directed to contract formation is "[d]efendants agreed that Plaintiffs would be provided care in a loving and supportive relationship." Plaintiffs also aver they performed "each and every condition, covenant, and promise and obligation required on their part," without providing any indication as to what those terms were. These contentions are insufficient to establish a plausible basis for the existence of an enforceable contract. Therefore, claims fifteen and sixteen are dismissed with leave to amend.[5]

F.  Conspiracy

In claim fourteen, plaintiffs seek to establish defendants were engaged in a civil conspiracy. Conspiracy is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994). The elements of a conspiracy claim are: (1) formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) resulting damage. *Id.* at 511. In order to establish the formation of a conspiracy, a plaintiff must demonstrate that the defendants had actual knowledge of, and the intent to aid, the planned tort. *See Kidron v. Movie Acquisition Corp.*, 40

---

[5]  To the extent plaintiffs intend to state a breach of contract claim for promises related to Joe and Natalya's marriage, however, they should recognize that California Civil Code section 43.4 presents a potential statutory bar. ("A fraudulent promise to marry or to cohabit after marriage does not give rise to a cause of action for damages.") The statute does not merely apply to promises "to marry," but also to promises "of marriage." *Boyd v. Boyd*, 228 Cal. App. 2d 374, 377 (1964) (When a defendant makes a promise to marry, "he contracts not only to undergo a marriage ritual but also to fulfill matrimonial obligations and expectations."). Thus, section 43.4 eliminates lawsuits where the plaintiff seeks compensation for any of the "array of interrelated commitments and expectations" associated with marriage. *Id.*

1  Cal. App. 4th 1571, 1582 (1995). While knowledge and intent may be inferred from circumstances
2  including the nature of the acts committed and the relationship and interests of the alleged
3  coconspirators, association alone is insufficient. *Id.* (citations omitted). "There must be evidence of
4  some participation or interest in the commission of the offense." *Id.* (internal quotations and citation
5  omitted).

6  While plaintiffs may seek to hold Dan liable for the conduct of Joe, and vice versa, they
7  must first establish the formation of a conspiracy. Plaintiffs, however, merely state in conclusory
8  fashion that Joe and Dan "willfully conspired" in or around October 2005 fraudulently to induce
9  them to immigrate and to deny them rights under United States law. As discussed above, plaintiffs
10 fail to state a claim that Joe was engaged in a fraudulent scheme in 2005. Moreover, there are
11 simply no facts averred reflecting that Dan knew of any fraud or intended to aid it in 2005. Finally,
12 while plaintiffs also allege acts in furtherance of an ongoing conspiracy, they fail to make specific
13 allegations against Dan and Joe individually, as opposed to "defendants" collectively. For example,
14 they contend that defendants "repeatedly threatened physical harm, death threats [sic] and
15 deportation." Although the complaint contains numerous allegations that Joe threatened Natalya
16 and Liza, prior to claim fourteen there are no averments that Dan made any such threats. In short,
17 plaintiffs cannot plead the existence of a conspiracy through general allegations that already group
18 both defendants' conduct together. Accordingly, the conspiracy claim is dismissed with leave to
19 amend.

20 G. <u>Additional Tort Claims</u>

21 Plaintiffs also raise several other common law tort claims against the defendants collectively,
22 including: invasion of privacy (claim three); false imprisonment (claim four); assault and battery
23 (claim six); intentional infliction of emotional distress (claim seventeen); and negligent infliction of
24 emotional distress (claim eighteen). The complaint may contain sufficient factual allegations to
25 state many of these tort claims, particularly with respect to Joe's conduct toward both Natalya and
26 Liza. As pled, however, each of the claims avers that the defendants collectively committed these
27 torts against the plaintiffs collectively. The claims cannot be maintained in this fashion. In order
28 for each defendant to answer the complaint in good faith and without prejudice, he must be given

notice of the specific conduct for which each plaintiff seeks to hold him liable. Accordingly, claims three, four, six, seventeen, and eighteen are dismissed with leave to amend.

## V. CONCLUSION

Defendants' motion to dismiss the TVPRA section 1589 claim is denied for the claim against Joe and granted with leave to amend the claim against Dan. The TVPRA section 1590 claim is dismissed with leave to amend. Plaintiffs may rely on the FLSA and the California Labor Code in arguing the value of their labor, if they prevail on their TVPRA claims, but their FLSA and California Labor Code claims may not proceed as stand-alone causes of action premised on fraudulent inducement to marry, so defendants' motion to dismiss claims for relief seven through eleven is granted without leave to amend. Plaintiffs' claim for "negligent" fraud is dismissed without leave to amend. The remaining claims for fraud, misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, conspiracy, invasion of privacy, false imprisonment, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress are all dismissed with leave to amend. Plaintiffs must file any amended complaint within 20 days from the date of this order.

IT IS SO ORDERED.

Dated: 12/22/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE