1  PETER GOLDSTONE, (SB#221220)
   Law Offices of Peter Goldstone
2  703 Second Street, Suite 411
   Santa Rosa, CA 95404
3  Ph:  (707) 237-5991
   Fx:  (707) 237-6070
4  Email: peter@goldstonelaw.com

5  NANCY A. PALANDATI, (SB#169987)
   Law Offices of Nancy A. Palandati
6  1180 Fourth Street, Suite B
   Santa Rosa, CA 95404
7  Ph: (707) 222-3115
   Fx: (707) 222-3115
8  Email: npalandati@palandatilaw.net

9

10 Attorneys for Plaintiffs SHUVALOVA

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

|  |  |
|---|---|
| 14  NATALYA SHUVALOVA and ELIZABETH SHUVALOVA, by and through her Guardian Ad Litem NATALYA SHUVALOVA, | **Case No. CV: 10:2159 RS**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES** |
| 15 | |
| 16 | |
| 17              Plaintiffs, | |
| 18  v. | |
| 19  JOSEPH RICHARD CUNNINGHAM, DANIEL CUNNINGHAM, and DOES 1 – 50 Inclusive. | |
| 20 | |
| 21              Defendants. | **Honorable Richard Seeborg** |

22

23        Plaintiffs NATALYA SHUVALOVA and her daughter ELIZABETH SHUVALOVA

24 by and through their undersigned attorneys submit their First Amended Complaint, pursuant

25 to the Court's order denying in part and sustaining in part the Defendants' Motion to Dismiss.

26 Plaintiffs, with personal knowledge as to themselves and actions and otherwise upon

27

28
_____

First Amended Complaint                          *Shuvalova, et al., v. Cunningham, et al.*
                                                 Case No. CV:10:2159 RS

information and belief, hereby allege as follows:

## I.    INTRODUCTION

1.      Human trafficking is a modern-day form of slavery, involving victims who are forced, defrauded, or coerced into sexual or labor exploitation.  Trafficking in human beings is reaching epidemic proportions throughout the world, including right here in the United States.  Former President Bush called human trafficking a special kind of evil in the abuse and exploitation of the most innocent and vulnerable, and Congress, recognizing the countless human tragedies such practices inflict, passed the Trafficking Victims Protection Reauthorization Act of 2003 (the TVPRA), establishing a private cause of action for the victims of human trafficking in order to ensure that both victims can be made whole and that the perpetrators of this inhuman practice are fully deterred from committing such acts.  This action is brought under the RVPRA and other state and federal laws to seek just compensation for a victim of human trafficking.

2.      Natalya Shuvalova and her daughter Elizabeth (Liza) are just two of the tens of thousands of victims of human trafficking in the United States, brought to this country under false promises.  Defendants Joseph Cunningham (Joe) and Daniel Cunningham (Dan), his middle-aged son, knowingly and willfully conspired to lure Natalya to bring her minor daughter, Liza, from their home in Russia, with false promises of joining a loving and supportive family through marriage.  Joe spent two years "wooing" Natalya, visiting her and her daughter in Europe on multiple occasions and proposed marriage.  He promised to facilitate all the necessary procedures for Plaintiffs' legal emigration to the U.S.  He directly or implicitly promised to provide adequate food, shelter, clothing and medical care, as required by a U.S. citizen sponsoring immigrants.

---

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

3.      Joe's promises turned out to be horribly false.  Once on Joe's isolated, rural property in Lake County, Joe began a campaign of abuse and terror subjecting Natalya and Liza to what would become more than seven long months of backbreaking labor and psychological abuse.  Joe fraudulently induced Plaintiffs to move from their home in Russia, to be forced into involuntary servitude.

4.      Plaintiffs bring this civil action under the TVPRA, state common law, and other provisions of federal and state law.  By this Amended Complaint, Plaintiffs seek redress for these egregious violations of their basic human and civil rights.

## II.      JURISDICTION

5.      Jurisdiction of the subject matter of this action is established under 28 U.S.C. Section 1331, the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* and the Trafficking Victims Protection and Reauthorization Act, 18 U.S.C. § 1589 *et. seq.*

6.      This Court has supplemental jurisdiction over the related state law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction over these claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all of the Defendants reside in this District, and because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## III.      PARTIES

8.      Plaintiffs Natalya Shuvalova (Natalya) and her daughter, Elizabeth Shuvalova (Liza) were at all times relevant, residents of Lake County, California, in Defendant Joseph Cunningham's home for approximately seven months before they successfully escaped to a

---

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

women's shelter in Sonoma County.  Following their escape from Defendants, and through the present they reside in San Francisco County.

9.      Defendant Joseph Cunningham (Joe) is a resident of Lake County, California and owns the Lake County property where Plaintiffs were held captive, before their escape. Plaintiffs do not know where Defendant Daniel Cunningham (Dan) lives, but are informed and believe that he is a resident somewhere in Northern California and lived most, if not all relevant weekends at Joe's property in Lake County.

10.     Plaintiffs are ignorant of the true names and capacities of Defendant DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs as set forth herein.  Plaintiffs will amend this Amended Complaint to state the true names and capacities of Defendant DOES 1 through 10, inclusive, when they have been ascertained.

11.     At all times herein mentioned each DOE Defendant was the agent or employee of Defendants Joe and Dan, and in doing the things alleged, were acting within the course and scope of such agency or employment, and with the actual or implied permission, consent, authorization, and approval of Defendants Joe and Dan.

### IV.    FACTUAL ALLEGATIONS

**REPRESENTATIONS TO PLAINTIFF**

12.     Natalya (a native of Russia) met Joe (a United States citizen) through a computer dating service, eHarmony, in October, 2005.  They developed a personal relationship over a two-year period that included daily emails and hours of phone calls throughout the week.  They vacationed together in Poland twice, for two weeks each time.

---

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

Joe discussed marriage and lifetime commitment with Natalya; he proposed to her soon thereafter.

13.     Joe promised to take care of Natalya and her daughter Liza (who was 16 at the time) and provide them with a loving home and a commitment to Natalya as his wife.  He was bound by U.S. law to perform obligations of a sponsor for the immigrant Plaintiffs.  At a minimum, Joe was required to obtain necessary documentation and assist Plaintiffs in obtaining and maintaining legal immigration status in this country and to provide necessary food, shelter, clothing and medical care.

14.     In fact, Joe's intent was to obtain unpaid labor and surrogate connubial services from both plaintiffs.  Plaintiffs are informed and believe and thereupon allege that Joe planned to bring Plaintiffs to the United States to be used as free labor at his remote Lake County property.  They believe that Joe also intended to hold both Plaintiffs captive, prevent them from interacting from the outside world, and hide their presence at the property for purposes of sexual gratification for himself and his son, Dan.

15.     Natalya agreed to the marriage and she and her daughter moved to the United States in reliance of these promises.  She left her job, her home, and the rest of her family to live with Joe.  Liza gave up her musical education and career to come to the United States with her mother.  Natalya used her savings to secure the necessary visas and travel documents to leave Russia and enter the U. S.  The couple agreed that Natalya and Liza would come to the U.S. in February 2008 and live with Joe.

16.     Plaintiffs arrived in California in February 2008 and immediately moved in to 2830 Mediros Lane, Clearlake, California.  Joe is the owner of the 2830 Mediros Lane, a rural, isolated property.  In an isolated ceremony arranged by Joe, Joe and Natalya were

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

5

married on May 3, 2008.

JOE'S ABUSIVE TREATMENT TOWARDS PLAINTIFFS

17.     Dan is Joe's 35-year old son; Dan lived at the property off and on during relevant times of this Amended Complaint, but spent each weekend at his father's property during Plaintiffs' captivity.

18.     Within weeks of moving in, Joe began a campaign of physical and verbal threats, aggressive behavior and psychological torture directed at both Plaintiffs, keeping and treating them as virtual slaves.

19.     Joe frequently yelled and screamed at both mother and daughter, cursing at them, using obscene and threatening language.  He cursed at Liza, especially when he was dissatisfied with the heavy physical labor he had her doing hours every day, calling her "dumb," a "stupid bitch," a "lazy ass" and a "fucking bitch."  He told Liza that she was too stupid to go to school and prevented her from going to school until mid-September.  When doing her homework, Joe would stand over her and yell at her for perceived mistakes and tell her that she was stupid or to stupid to go to school, but demanded that she spend five hours a day memorizing the dictionary.  He prevented Liza from leaving the house until approximately July 2008.

20.     Joe frequently called Natalya "bitch," "fucking bitch," "stupid bitch." When Natalya tried to intervene and protect her daughter, Joe called Natalya (a professional translator in her native Russia) an "unprofessional dumb shit" and a "stupid bitch."  He told Natalya that she was a bad mother and repeatedly threatened Natalya with serious physical harm. As things deteriorated, Joe started in with death threats against Natalya. He told Natalya that she would regret it if she told anyone on the outside what happened on his property. He

---

told Liza that her mother would be sorry if Natalya failed to do as he wanted and later asked Liza to assist him in getting rid of her mother.

21.     When Natalya complained that Joe was not providing her and her daughter with enough food to eat, Joe threatened to send Liza back to Russia and said that he didn't want to pay money for food or heat Liza's bedroom. Natalya was forbidden to leave the house except to go with Joe to church. He forced her to perform heavy manual labor on his property for hours daily.

22.     Joe threatened both Plaintiffs by kicking at and throwing furniture, plates and cups at them; he purchased a rifle shortly after the Plaintiffs moved in. Joe kept guns and large knives lying throughout the house, on tables and within easy reach. He often grabbed weapons in his frequent bouts of rage, and threatened Natalya and Liza with eminent, physical harm.

23.     Joe (with Dan's help) forced both Plaintiffs to engage in heavy, manual labor from the onset of their residency at the home. Both Plaintiffs were forced to dig out large rocks and boulders, remove rocks and boulders, break down the rocks and boulders into smaller pieces, and basically clear a large parcel of land. This also included manually moving tons of earth, removing logs and felled trees and other overgrowth and debris from the property. Natalya had to cut up wood and downed timber with a chainsaw, with no experience and little or no protective gear. She was forced to build a metal with no experience or background. Liza, in addition outside labor, was forced to keep the inside of the home spotless, 24 hours a day. Joe would force her to do this work to his arbitrary and capricious standards at any time he was dissatisfied with her performance.

24.     Joe physically and verbally threatened Plaintiffs in his demands for their labor.

Dan helped his father carry out the threatening atmosphere with his physical presence, physically blocking Plaintiffs' movements, grabbing and sexually molesting Liza and physically restraining her.  Natalya was actually locked out of the house for many hours every day, while she performed the labor at Joe's demand.. Natalya was forced to do this work 8–12 hours a day or more, usually seven days per week. Joe would not allow Natalya to rest or drink water during this grueling work, even during the sweltering heat of the Lake County summer. Joe forced Liza to perform some of the same activities for hours each day, sometimes to the point of exhaustion.

25.      Joe controlled all outside contact that Natalya and Liza had with the outside world. He prevented Natalya and Liza from leaving the house during most of the 7 months that Plaintiffs lived with Defendants. Natalya was usually allowed to leave only when accompanied by Joe, to attend church. Joe prevented Liza from leaving the home at any time, until July, 2008 and greatly restricted her movements off the property even after that time. No one was allowed to visit for months after Natalya and Liza moved in. Defendants intercepted or blocked emails and internet access and prohibited Plaintiffs from using the phone. Joe refused to allow Liza to attend school until weeks before Plaintiffs escaped, despite that fact that she had excelled musically and academically in Russia. Joe repeatedly threatened Natalya that she would "regret it" if she ever disclosed to anyone what occurred in the home.

26.      As things worsened, Joe threatened Plaintiffs with physical violence and death if they should disobey him or if they should tell anyone about what was going on inside the home. He enforced these threats by physical force, including grabbing and violently shaking Natalya, throwing crockery, kicking chairs, demonstrating and talking about firearms and large knives. He told Natalya that he had people that would come after her and take care of

her if she left, and told Liza that he wanted to "get rid of" her mother. These remarks were made in the context of Joe's frequent tirades and the Plaintiffs interpreted them as a death threats. He often bragged to Natalya that because he is a lawyer, he could easily manipulate the legal system, leaving her no recourse.

27.     Joe forced Liza to give him massages, demanding that she straddle his naked body, and massage him for up to two hours each time.  He demanded these massages approximately four times per week.  During the massages, Joe locked Natalya out of the house.  Out of fear for herself and her mother, Liza did not initially tell her mother about these massages.  This happened many times before Liza told her mother; Natalya complained when she first heard about it, but the massages did not stop; Joe still forced Liza to massage his naked body.  Neither of the Plaintiffs made further complaints out of fear for their safety.

28.     Joe routinely asked Liza about her supposed sex life both with a boyfriend she had back home and with a boy she talked about, in Clearlake. He talked explicitly about sex with her, asking about her experiences with sexual intercourse and oral sex. During the massages, Joe often told Liza that she should feel comfortable walking around the house naked. Liza told him that she did not want to walk around naked or to discuss such things with him because it made her feel very uncomfortable.

29.     Weeks before escaping, Liza developed a severe ear infection. Joe prevented her from receiving medical treatment for days, instead physically restraining Liza and forcing some concoction he had boiled up, into her ear. Natalya protested Joe's actions and he locked Natalya out of the bedroom during his treatment. He then forced Liza to take unknown, expired prescription medicine Joe had in the house. Natalya was able to contact a male acquaintance by phone, without Joe's knowledge.  The acquaintance came over and was able

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

1    to convince Joe to allow him to take Liza in for emergency medical treatment.

2    DAN'S ABUSIVE TREATMENT TOWARDS PLATINIFFS

3          30.    Dan, Joe's 35-year old son, lived at the house during weekends. He is a very

4    large man who claims to weigh 400 pounds and is well-over six feet tall. He routinely grabbed

5    at and touched Liza's crotch, buttocks and breasts and made sexual references about her body.

6    He frequently grabbed her from behind and lifted her, often forcing her to sit on his lap and

7    restricted her movements. He forcibly kissed her and fondled her, told her that he was a

8    virgin, that she could "please" him a lot and he wanted to be her boyfriend. On numerous

9    occasions, Dan burst into Liza's bedroom while she was in the middle of dressing. He stood

10   and stared at her in her underwear and would not leave. At other times, he came into the

11   bathroom while she was showering. When Liza protested these invasions, Dan said it was "no

12   big deal" because they were now family.

13         31.    Dan's physical presence at the property was a constant reminder of the

14   Plaintiffs' powerlessness to escape, have privacy or even physical safety.

15   THE ESCAPE:

16         32.    Plaintiffs' ordeal ended only when they were able to sneak off the property on

17   September 27, 2008 and with the assistance of friends, escape to a Sonoma County women's

18   shelter. They have been forced to live in fear in a woman's shelter ever since their escape.

19                              **V.    CLAIMS FOR RELIEF**

20                           **FIRST CLAIM FOR RELIEF**
                    (TVPRA, Forced Labor, 18 U.S.C.A. §§ 1589, 1595)
21                      (All Plaintiffs Against All Defendants)

22         33.    Plaintiffs hereby refer to and incorporate each and every allegation set forth in

23   Paragraphs 1 through 32 of this Amended Complaint as though fully set forth herein.

First Amended Complaint                                    *Shuvalova, et al., v. Cunningham, et al.*
                                                          Case No. CV:10:2159 RS

34.     The forced labor provision of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. Section 1589, establishes that whomever knowingly provides or obtains the labor or services of a person (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of law or the legal process shall be fined or imprisoned not more than 20 years, or both.

35.     Joe knowingly induced Natalya and Liza to come to the United States with promises of marriage and a loving family, and in legal conformance with U.S. immigration laws.  Instead, he physically, emotionally and psychologically abused  Plaintiffs over more than seven months of virtual slavery and sexual assault and battery against Liza.  Dan engaged in aggressive, sexual assaults on Liza and did so out of pure, physical force (picking her up, restraining her, forcibly groping and kissing her).  Both Joe and Dan engaged in a pattern of emotional, physical and psychological threats and acts to force Plaintiffs to stay at Joe's property and comply with their demands.

36.     Both Defendants knowingly obtained Plaintiffs' services, by their scheme, plan or pattern intended to cause Natalya and Liza to believe that, if they did not perform the labor or sexual services Defendants demanded, they would suffer serious harm, physical restraint, deportation and even death.

37.     Defendants knowingly obtained sex-related services with Liza, a minor at the time, by physical, emotional and psychological abuse, as well as abuse or threatened abuse of the law or the legal process.

---

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

38.     Defendants use force, threats and intimidation to hold Plaintiffs in captivity and force them to work in unsafe conditions.

39.     As a result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

40.     Pursuant to 18 U.S.C. § 1595, Plaintiffs Natalya and Liza are entitled to recover damages and reasonable attorneys fees for Defendants wrongful conduct.

**SECOND CLAIM FOR RELIEF**
(TVPRA, Trafficking Into Servitude, 18 U.S.C.A. §§ 1590, 1595)
(Against Defendant Joseph Richard Cunningham)

41.     Plaintiffs hereby refer to and incorporate each and every allegation set forth in Paragraphs 1 through 40 of this Amended Complaint as though fully set forth herein.

42.     The trafficking into servitude provision of the TVPRA, 18 U.S.C. § 1590, provides: Recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violation of laws prohibiting slavery, involuntary servitude, debt bondage or forced labor shall subject defendant to fines.

43.     As set forth herein, Joe plotted to and utilized an online dating service to bring Natalya and Liza to the United States on false pretenses.   His purpose for bringing this Russian woman and her daughter to the U.S. was to provide labor and sexual services to each of Defendants.  In this manner, Joe knowingly recruited, harbored, transported, provided, and obtained labor and sexual services from Natalya and Liza in violation of the TVPRA.

44.     As a result of Joe's conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

45.     Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages and reasonable attorneys fees for Joe's wrongful conduct.

## THIRD CLAIM FOR RELIEF
(Invasion of Privacy)
(All Plaintiffs Against All Defendants)

46.     Plaintiffs hereby refer to and incorporate each and every allegation set forth in Paragraphs 1 through 45 of this Amended Complaint as though fully set forth herein.

46.     All Defendants violated Plaintiffs' personal privacy by acting in a manner which had the effect of putting Plaintiffs in such close proximity of the Defendants at all times, as to eliminate Plaintiffs' personal privacy by effectively disallowing it. Defendants limited Plaintiffs' communications with and without their knowledge and/or consent, restricted Plaintiffs' access to the phone, internet and email; and prevented or greatly restricted access to friends and the outside world.

47.     On multiple occasions, Dan barged into Liza's bedroom and bathroom knowing that she was in a state of undress or nudity.  Liza vocally and firmly informed Dan that she did not condone, accept, consent to or otherwise enjoy these intrusions.  Dan continued his behavior on each occasion and throughout the time that Liza lived in the Cunningham home.

48.     Dan intruded upon Liza's solitude, seclusion, privacy and personal affairs when, as set forth above, he repeatedly and frequently burst into Liza's bedroom while she was in the middle of dressing. He stood and stared at her in her underwear and would not leave, despite her pleas.

49.     On multiple occasions, Dan physically restrained Liza and groped and pawed at her body. Liza vocally and firmly informed Dan that she did not condone, accept, consent to or otherwise enjoy these restraints, groping and pawings.  Despite Liza's protestations, Dan continued his behavior on each occasion and throughout the time that Liza lived in the

_____

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

13

Cunningham home.

50.     Dan intruded upon Liza's solitude, seclusion, privacy and personal affairs when, as set forth above, he 1) grabbed at and touched Liza's crotch, buttocks and breasts and made sexual references about her body; 2) repeatedly and frequently grabbed her from behind and lifted her, often forcing her to sit on his lap and restricted her movements; and 3) repeatedly and frequently forcibly kissed her and fondled her.

51.     Joe intruded upon Liza's solitude, seclusion, privacy and personal affairs when, as set forth above, Joe stood over Liza while he forced her to do homework of his own device and conception, and then yelled at her for perceived mistakes.  Knowing that Liza was a gifted student and trained musician, Joe told her that she was stupid or too stupid to go to school, but demanded that she spend five hours a day memorizing the dictionary.  At times, Joe would raise his fist close to her face, when he was angry, acting as though he was about to strike Liza.

52.     Joe intruded upon Liza's solitude, seclusion, privacy and personal affairs when prevented Liza from leaving the house for approximately until July 2008 and then continued to severely restrict her movement and contact with the outside world under threat and coercion of violence and consequences to her and her mother, including death.

53.     Joe intruded upon Liza's solitude, seclusion, privacy and personal affairs when he intercepted and/or blocked her emails and internet access and prohibited her from using the phone.

54     Joe intruded upon Liza's solitude, seclusion, privacy and personal affairs when he refused to allow her to be seen and treated by a doctor for her ear infection and forced her to be treated by Joe, himself, although he was entirely unqualified and failed in treating her.

_____

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

55.     Dan acted in concert with Joe to keep Natalya and her daughter physically isolated from each other and away from normal contact with the outside world. Liza and Natalia vocally and firmly informed Dan that they did not condone, accept, consent to or otherwise enjoy these restrictions and isolation from each other and the rest of the world.  Dan continued this behavior throughout the time that Plaintiffs lived in the Cunningham home.

56.     Joe intruded upon Liza's solitude, seclusion, privacy and personal affairs when he by controlling nearly every waking moment of Natalya's life while she lived in the Cunningham home.  Aside from the heavy manual labor, Joe removed or prevented Natalya from entering the house and kept her away from her daughter by locking Natalya out of the bedroom while he had Liza in the bedroom and out of the house at other times. He kept Natalya in a constant state of fear for her own safety and for the safety of her daughter.

57.     Joe controlled nearly every waking moment of Liza's life while she lived in the Cunningham home.  He forced her to engage in heavy, manual labor and sexually offensive acts. Joe forced Liza to massage his naked body frequently and repeatedly suggested that Liza should not wear clothes around the house.

58.     Joe and Dan repeatedly interrogated Liza about her sexual experience and her private life in a manner that embarrassed, offended, humiliated and otherwise injured her psychologically.  Liza—a minor at the time— vocally and firmly informed both Defendants that she did not condone, accept, consent to or otherwise enjoy these inquiries and invasions into her personal space and sexual life and identity.  Both Defendants continued their behavior on each occasion and throughout the time that Liza lived in the Cunningham home.

59.     Joe repeatedly brandished guns, knives and other weapons and threatened physical consequences against Plaintiffs as a consequence of their refusal to accept the

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

constraints upon their solitude, seclusion, privacy and personal affairs.  Both Defendants continued their behavior on each occasion and throughout the time that Liza lived in the Cunningham home.

60.    As a proximate result of said conduct, both Plaintiffs suffered intrusions into their solitude, seclusion, privacy and personal affairs, at the hands of both Defendants, entitling them to damages in amounts to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(False Imprisonment)
(All Plaintiffs Against All Defendants)

61.    Plaintiffs hereby refer to and incorporate each and every allegation set forth in Paragraphs 1 through 60 of this Amended Complaint as though fully set forth herein.

62.    Defendants violated Plaintiffs' personal liberty by acting in a manner which had the effect of confining them against their will and limiting their contact with anyone from the outside world.

63.    Joe prevented both Natalya and Liza from contact with family and other support networks by refusing them access to the internet, telephone and post and denying them the right to come and go as they chose. Joe accomplished this constraint and restraint throughout the negligent and intentional use of  1) physical force and the express and implied threats of physical force – the brandishing of weapons and exercise of physical, bodily restraint; 2) economic force – failure to provide food, money and other means to Plaintiffs, , 3) through repeated threats of legal action – going to Immigration, not following through with his responsibilities required of a U.S. sponsor for immigrants; and 4) even death – both threatening Natalya directly and by telling Liza he would do away with Natalya, and asking her to help, and by the brandishing of firearms and other weapons.  Both Joe and Dan

continually and continuously acted in a manner which had the effect of threatening harm to Plaintiffs if they attempted to escape. Joe further accomplished this by keeping mother from daughter, and threats of deportation.

64.     Plaintiffs' false imprisonment ended on or about September 27, 2008, by physically fleeing the property. Defendants had no privilege, permission or consent to detain, restrain and restrict Plaintiffs and were on notice that Plaintiffs objected to and did not want to be so detained, restrained or restricted.

65.     As a proximate result of said conduct, Plaintiffs suffered an intrusion into their solitude, seclusion, privacy and personal affairs, entitling them to damages in amounts to be proven at trial. Defendant committed the acts alleged in this Complaint with the wrongful intention of injuring Plaintiffs with an improper motive amounting to malice, in conscious disregard of Plaintiffs' rights. Because Defendants actions were willful, wanton, malicious and oppressive, Plaintiffs' are also entitled to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
(Assault & Battery)
(All Plaintiffs against All Defendants)

66.     Plaintiffs hereby refer to and incorporate each and every allegation set forth in Paragraphs 1 through 65 of this Amended Complaint as though fully set forth herein.

67.     Joe subjected Natalia to offensive and harmful nonconsensual physical contact, cited above (e.g., yelling and screaming at her, threatening to use of guns or knives on her, violent shaking and grabbing her) forced labor, providing insufficient food, and preventing her from getting water or resting while doing the forced labor.   This caused Natalya to be constantly apprehensive that she would be subjected to nonconsensual intentional invasion of her right to be free from offensive and harmful physical contact.

_____

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

17

68.     This offensive and harmful nonconsensual physical contact (as set forth in more detail, above) included but was not limited to pushing, choking, violent shaking of her body and forced labor beyond the limits of her physical strength and against her will.

69.     Joe's demands for frequent, naked massages, subjected Liza to offensive and harmful nonconsensual physical contact and caused her to be constantly apprehensive that she would be subjected to nonconsensual intentional invasion of her right to be free from offensive and harmful physical contact. Liza was extremely offended by this unwanted touching and threat thereof, and any reasonable person in her situation would have been offended, thereby.

70.     When Joe threatened Liza and Natalia by kicking at and throwing furniture, plates and cups at them, he caused the threat of, and actual non-consensual physical contact that injured Plaintiffs both physically and psychologically.

71.     When Joe brandished and displayed guns and large knives displayed throughout the house during his frequent bouts of rage, and threatened Natalya and Liza with eminent, physical harm, Natalia and Lisa were reasonably terrified, harmed and psychologically offended by the threat of physical harm, and any reasonable person in their situation would have been offended, thereby.

72.     When Joe told Natalya that he had people that would come after her and take care of her if she left, and told Liza that he wanted to "get rid of" her mother, in the context of his violent and threatening tirades, Natalia and Lisa were reasonably terrified, harmed and psychologically offended by the threat of physical harm, and any reasonable person in her situation would have been offended, thereby.

73.     When Joe told Natalya that he had people that would "take care of" her if she

_____

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

18

should disobey him, supporting this with the assertion that because he was a lawyer, he could easily manipulate the legal system, leaving her no recourse, Natalia was reasonably terrified, harmed and psychologically offended by the threat of physical harm.

74.     When, against Natalya's protestations, Joe forced the minor, (then 16-year-old) Liza to massage his naked body for hours, in his bedroom behind closed (and often, locked) doors, several times a week, straddling his naked body, this was an unwanted touching.  Liza did not choose to participate in this unwanted touching, informed Joe that she did not want to participate and was reasonably offended and psychologically injured by this forced and unwanted contact, and any reasonable person in their situation would have been offended, thereby.

75.     When Dan grabbed at and touched Liza's crotch, buttocks and breasts, grabbed her from behind and lifted her, often forcing her to sit on his lap and restricting her movements, as well as when he forcibly kissed her and fondled her, Liza communicated to Dan that these touching were unwanted and implored him to stop.  Nevertheless, Dan persisted in his contacts throughout Plaintiffs' stay at the Cunningham home.  Liza was deeply offended and psychologically injured by these touching and her inability to escape Dan's physical contact, and any reasonable person in her situation would have been offended, thereby.

76.     As a proximate result of said conduct, Plaintiffs have suffered and continue to suffer extreme mental distress, humiliation, anguish and emotional and physical injuries and economic losses, all to their damage in amounts to be proven at trial.

### TWELFTH CLAIM FOR RELIEF
(Fraud)
(Against Defendant Joe Cunningham)

77.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 76 of this Complaint as though fully set forth herein.

78.     Joe made representations of material fact when he told Natalya that  he had planned to provide a loving, supportive home for Plaintiffs when (and if) they moved to the United States and to his property.  He made further representations that he would perform as required to ensure that 1) Plaintiffs had legal status in the U.S., and 2) that he would perform his duties as a sponsor under federal immigration laws to provide necessary food, shelter, clothing and medical care.

79.     Plaintiffs reasonably believed that Joe intended and planned to provide a loving, supportive home for Plaintiffs when (and if) they moved to the United States and to his property, as well as to facilitate the processes necessary to maintain legal status in the U.S. Based upon this belief in the sincerity and honesty of Joe's intentions, they uprooted from their home in Russia and moved to the United States.

80.     Joe's representations were in fact false.  The truth was that Joe never planned or intended to provide a loving, supportive home for Plaintiffs when (and if) they moved to the United States and to his property.   Joe had, in fact, planned to have Plaintiffs come to the United States to serve as virtual slaves.  He had no intention of following through on his obligations under federal immigration laws so as to obtain and maintain legal status for Plaintiffs.  He had no intention of providing for Plaintiffs, as required of a U.S. sponsor under immigration laws, for the minimum basics of food, shelter, clothing and medical care.

81.     When Joe made these representations, he knew they were false and/or had no reasonable ground for believing that the presentations were true. He made the representations with the intent to defraud and induce Plaintiffs to come to the United States. At the time

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

20

Plaintiffs acted, Plaintiffs did not know the representations were false and believed they were true. Plaintiffs acted in justifiable reliance upon the truth of the representations.

82.     Joe told Natalya that he was a lawyer.  Joe has not been an active member of the California Bar since 1985 and has been ineligible to practice since 1995.  Joe knowingly made false representations to Natalya in or about October 2005 about the circumstances and the lawfulness of her emigration to the United States, including, but not limited to, falsely informing Natalya and her daughter that they would be cared for in a loving and safe relationship, that he would comply with his obligations in adjusting Plaintiffs' immigration status and by complying with immigration sponsorship to provide food, shelter, clothing and necessary medical care.

83.     Joe made false representations to Plaintiffs in October 2005 about the circumstances and the lawfulness of Plaintiffs; emigration to the United States, including, but not limited to, falsely informing Plaintiffs that his bringing them to the United States was in accordance with the laws of the United States. As specifically pled above, with reference to the tactics, threats of violence, violence and forced labor, Joe's conduct belies a plan that was not in accordance with the laws of the United States.  In fact, Joe planned to, and did, subject both Plaintiffs to an inhuman and unconscionable ordeal of slavery or quasi-slavery under physical and emotional threat and duress and without lawful authority.

84.     The falsity of Joe's representations became abundantly evident very soon after Plaintiffs arrived in Lake County through Joe's abusive, violent and repressive illegal actions (as set forth above) that Joe intended to make Plaintiffs believe that they had no legal rights, that they were subject to deportation, that they would be physically harmed and/or that Natalya would be killed if Joe was dissatisfied with them.

85.     Joe had knowledge of the falsity of his misrepresentations at the time those misrepresentations were made.

86.     Joe intended for Natalya and Liza to rely on his false statements and misrepresentations. Plaintiffs justifiably relied on Joe's misrepresentations in deciding to leave their home and family in Russia and emigrate to the United States. Joe, with the help of his son, Dan continued this fraud by physical force, keeping them from one another and the outside world, and claiming legal authority for their actions.

87.     In making these false representations to Plaintiffs, Joe intended to induce Plaintiffs to leave their family and travel to the United States where they were forced into virtual slavery and kept against their will. Once here, Joe intended to induce Plaintiffs to remain, against their will under physical threat, physical constraint and unlawful authority.

88.     Plaintiffs were injured as a result of their reliance on Joe's false statements and misrepresentations, which caused them to leave their family and home country, subjected them to exploitation of their labor, and caused them to suffer physical and emotional damages. Plaintiffs are entitled to damages in an amount to be proven at trial.

89.     Joe committed the acts alleged in this Amended Complaint with the wrongful intention of injuring Plaintiffs with an improper motive amounting to malice, in conscious disregard of Plaintiffs' rights. Because Joe's actions were willful, wanton, malicious and oppressive, Plaintiffs are also entitled to an award of punitive damages.

## SEVENTEENTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)
(Against All Defendants)

90.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 89 of this Amended Complaint as though fully set forth herein.

---

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

91.     Joe's actions of starting a romantic relationship with Natalya and then eventually having her and Liza come to the U.S. and marrying Natalya in May, 2008, were intended to create the trust and reliance that led Plaintiffs to relocate from Russia to the United States.  Joe's actions were unlawful and based on false pretenses.

92.     Dan's acts, by threatening, assaulting and battering Liza, with the knowledge of her age, vulnerability and dependence upon Joe as alleged herein.  , were intentional.

93.     Joe owed a duty of care and fiduciary duty to act in Plaintiffs' best interests.  Dan owed Plaintiffs an ordinary duty of care to avoid injuring them and may be held liable for such injuries caused intentionally or by his own carelessness, recklessness or disregard.

94.     By the conduct alleged above, Defendants engaged in extreme and outrageous conduct –conduct that is prohibited under California and Federal law and which is on its face reprehensible, despicable and inhumane.  Such conduct includes, but is not limited to, that conduct set forward in support of the causes of action for violation of the TVPRA, both for Forced labor and Trafficking into Servitude, Invasion of Privacy, False Imprisonment, Assault and Battery and Fraud with the intention to cause, or with reckless disregard of the probability of causing Plaintiffs severe emotional distress.  This conduct which was unprivileged and unwanted by Plaintiffs actually and proximately caused Plaintiffs, fear, depression, humiliation, mental anguish, and severe physical and emotional distress, directly and proximately causing damage to their physical and mental health. Both Plaintiffs have been diagnosed and are currently in treatment for psychological and physical injuries directly and proximately caused by Defendants, including but not limited to post-traumatic stress disorder.

95.     Defendants and each of them knowingly, deliberately, and intentionally committed the acts alleged, above, against Plaintiffs.

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

96.     The severe physical and emotional distress suffered by Plaintiffs as a result of Defendants' conduct has resulted in Plaintiffs' suffering damages and continuing to suffer damages, including injuries to their persons, in an amount which will be proven at trial.

97.     Defendants committed the acts alleged in this Amended Complaint with the wrongful intention of injuring Plaintiffs with an improper motive amounting to malice, in conscious disregard of Plaintiffs' rights. Because Defendants' actions were willful, wanton, malicious and oppressive, Plaintiffs are also entitled to an award of punitive damages.

## EIGHTTEENTH CLAIM FOR RELIEF
(Negligent Infliction of Emotional Distress)
(Against All Defendants)

98.     Plaintiff hereby refers to and incorporates each and every allegation set forth in Paragraphs 1 through 97 of this Amended Complaint as though fully set forth herein.

99.     Joe intentionally created the trust and reliance when he asked Plaintiffs to move from Russia to the United States unlawfully and on false pretenses.  He knew of Plaintiffs' vulnerability and dependence upon him, as alleged herein.

100.    Liza was 16 years old when she moved with her mother to Joe's property. Dan, a 35 year old, self-described 400 pound virgin, acted deliberately and with reckless disregard towards Lisa.  His threatening and actual offensive sexual advances, sexual groping and constant suggestions of sexual interaction with Liza harmed Liza.

101.    Defendants each negligently committed the acts alleged in this Amended Complaint against Plaintiffs and thereby caused Plaintiffs to suffer fear, depression, humiliation, mental anguish, and severe physical and emotional distress, directly and proximately causing damage to their physical and mental health. Both Plaintiffs have been diagnosed and are currently in treatment for psychological and physical injuries directly and

proximately caused by Defendants.

102.    By the actions alleged herein, Defendants negligently breached their duties of care to Plaintiffs, directly and proximately causing harm and damages to Plaintiffs.

## VI.    JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment or issue an order against Defendants, and each of them, as follows:

1.    Compensatory and special damages in an amount to be proven at trial;

2.    Statutory penalties and liquidated damages according to proof at the time of trial;

3.    Punitive and exemplary damages in an amount according to proof at the time of trial;

4.    Pre- and post- judgment interest;

5.    Reasonable attorneys fees and costs; and

6.    Such other and further relief as the Court deems just and proper.

Dated: January 11, 2011          LAW OFFICES OF PETER GOLDSTONE

*/s/ Peter Goldstone*

_____
PETER GOLDSTONE

Dated: January 11, 2011          LAW OFFICES OF NANCY A. PALANDATI

*/s/ Nancy A. Palandati*

_____
NANCY A. PALANDATI

## CERTIFICATE OF SERVICE

_____

First Amended Complaint                                        *Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS

I am a citizen of the United States.  My business address is 703 Second Street, Suite 411, Santa Rosa, California, 95404.  I am employed in the county of Sonoma where this service occurs.  I am over the age of 18 years and not a party to the within cause.

On January 11, 2011, I served the following documents(s) described as:

FIRST AMENDED COMPLAINT

on the party(ies) listed below, addressed as follows:

Dow W. Patten
The Law Offices of Spencer Smith
353 Sacramento Street, Suite 1120
San Francisco, CA 94111

I also caused to be sent by US Mail a copy to be lodged with the

☒ **By E-filing pursuant to the rules of the above-entitled court.**

AND BY PLACING A COPY IN THE US MAIL to The Honorable Richard Seeborg, addressed as follows:

The Honorable Richard Seeborg

Northern District of California

Courtroom 3, 17th Floor

450 Golden Gate Avenue

San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 11, 2011, at Santa Rosa, California.

*/s/ Peter Goldstone*
_____

Peter Goldstone

---

First Amended Complaint

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 RS