NANCY A. PALANDATI (SBN 169987)
LAW OFFICES OF NANCY A. PALANDATI
npalandati@palandatilaw.net
16129 Main Street, Unit B-138
Guerneville, CA 95446
Telephone: (707) 222-3115
Facsimile:  (707) 222-3115
Attorney for Plaintiffs, SHUVALOVA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| NATALYA SHUVALOVA and ELIZABETH SHUVALOVA,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JOSEPH RICHARD CUNNINGHAM, DANIEL CUNNINGHAM, and DOES 1 – 50 Inclusive.<br><br>　　　　Defendants. | **Case No. CV: 10:2159 YRG**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT DANIEL CUNNINGHAM'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [FRCP RULE 12(B)(1)]**<br><br>**Date: May 29, 2012**<br>**Time: 2:00 p.m.**<br>**Courtroom: 3**<br><br>**Honorable Yvonne Rogers Gonzalez** |
|---|---|

## I.　　INTRODUCTION

Natalya Shuvalova met Joe Cunningham on an internet dating site and became involved. He courted her, professed his love for her and her minor daughter, Elizabeth (Liza) Shuvalova and convinced Natalya to uproot herself and her teenage daughter to move from Russia to the U.S. where she and Joe[1] would marry. Shortly after arriving at Joe's rural house in Lake County, he began abusing Natalya and Liza, forcing the two to engage in back-breaking labor for Joe's benefit. He psychologically abused both by telling them that they had no value, they had no control; he insulted them, called them names and physically isolated mother from daughter. He forbade either to speak in Russian. He told both he was a lawyer and could easily use the legal system against them.

---

[1] The parties are referred to by their first names throughout this brief because both sets of parties have common last names; no disrespect is intended, only clarity.

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To　　　　　　　　　　　　　　　　Shuvalova, et al., v. Cunningham, et al.
Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]　　　　　　　　　　　　　　　Case No. CV:10:2159 YRG

1

Joe controlled and severely restricted all access Natalya and Liza had to the outside world; he restricted their physical movements in and out of the house, on and off the property and with other people. He monitored their emails, monitored or prevented them from using the phone and would not allow either plaintiff out of the home unless he accompanied them. He forbade Liza, who had excelled academically and musically in her native Russia, from going to school until weeks before she and her mother were able to escape, so that he could benefit from her labor. When Liza became seriously ill, he physically prevented her from seeking medical treatment, until a male acquaintance intervened.

In short order, the psychological abuse became physical. Joe would fly into a rage without warning and throw kitchenware, furniture and other items at Natalya. He displayed hunting knives and firearms throughout the house, threatening to use them on plaintiffs. Joe threatened that if Natalya left him or told anyone outside of the home of what took place there, that he had people who would "take care of" her. He tried to convince Liza to help get rid of her mother. Joe forced Liza to spend hours, up to several days a week, massaging his naked body. At times he locked Natalya out of the house during these massages; at other times, he simply locked his bedroom door when he forced Liza to massage him.

Joe successfully obtained the labor and services of both Plaintiffs in violation of 18 U.S.C. § 1589, the anti-human trafficking statute, with his threats of serious harm (and actual serious harm) and physical restraint with a plan or pattern intended to cause both Plaintiffs to believe that if they disobeyed either Defendant, they would suffer serious harm.

Dan's role in this systemic abuse was present early on and continued until Natalya and Liza were able to escape. He physically threatened Liza by touching her, grabbing at her breasts, buttocks and crotch, spoke routinely and opening about engaging in a sexual relationship with his new "step sister," forcibly kissed her and told her that she could make him happy with sex. He monitored Liza's movements in the house and outside on the property, by following her around, keeping her away from her mother. He worked to get her alone to continue the sexual assaults. He came into her bedroom and bathroom when she was nude or only partially clothed and refused to leave. Natalya was deliberately kept away from her

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To
Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]

*Shuvalova, et al., v. Cunningham, et al.*
*Case No. CV:10:2159 YRG*

2

daughter by both Dan and Joe, so that both could continue their abusive behavior against Liza and to do their best to prevent Natalya from stopping the abuse that allowed Joe to benefit from Plaintiffs' labor.

Liza believed that Joe and Dan were working together to keep Liza from her mother so that they could continue abusing Liza and to potentially help Joe carry out his threats to "get rid" or Natalya. Both Natalya and Liza were frightened of Joe and Dan and saw the two acting in concert to abuse them and keep them from telling anyone about the abuse. Natalya and Liza had every reason to believe that Dan was one of Joe's "people who would take care" of Natalya

Joe witnessed his 35 year old son, Dan, pawing at Liza – someone he professed to love like a daughter – and did nothing to stop it, despite Liza's protestations. By acting in concert, both defendants were able to facilitate each other's abusive actions. Natalya and Liza both believed that Dan was one of Joe's "people" who would help Joe to get rid of Natalya if she tried to help her daughter, escape from the abuse or if she refused to continue the grueling manual labor Joe forced on her day after day.

Defendants claim that Natalya somehow lured Joe into a marriage proposal, for the sole purpose of obtaining citizenship. They have consistently alleged that Natalya brought this suit because she was in the process of being deported, but neither Natalya, nor Liza have been subjected to investigation, let alone removal for violating immigration laws. On the contrary, both have been approved for legal status, primarily because of the abusive conditions caused by Defendants[2].

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint in May, 2010. Defendants a motion to dismiss under FRCP 12(b)(6) in August 18, 2010 (Dkt #19) and as a result of that motion, the Court dismissed California employment claims, denied or granted leave to amend on the remaining claims (Dkt #30). Plaintiffs filed a First Amended Complaint in January 11, 2011 (Dkt #31) and nearly four

---

[2] Dan relies heavily on extrinsic evidence that is neither before the court, nor has it been disclosed under FRCP 26(e)(1)(A) (e.g., undisclosed emails, undisclosed substantial costs in creating a "hobby garden," neighbors who allegedly saw Plaintiffs "sun bathing," "third party records" to show Dan was not present at the house). Motion 7:11-8:7.

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To      *Shuvalova, et al., v. Cunningham, et al.*
Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]                *Case No. CV:10:2159 YRG*

3

months later, Defendants filed their second FRCP 12(b)(6) motion on May 9, 2011 (Dkt #44). At that time, the court dismissed federal claims against Dan[3]. Plaintiffs requested an entry of default against both defendants, on February 16, 2012 (Dkt #72). The Clerk filed a Notice of Declination of Default, on February 21, 2012 (Dkt #74). More than two months after Plaintiffs request for default and almost a year after the Court dismissed federal claims against, Dan, Dan filed this motion to dismiss, on April 23, 2012 (Dkt #82).

### III. LEGAL ARGUMENT

#### A. Standard for FRCP 12(b)(1) Motions

Dan's motion appears to conflate two different types of attacks brought by a 12(b)(1) motion – "facial attacks" or "speaking motions." Facial attacks are limited to the allegations in the complaint, whereas "speaking motions" or factual attacks are based on extrinsic evidence, apart from the pleadings. *Gould Electronics Inc. v. United States* (3rd Cr., 2000) 220 F.3ed 169, 176; Holt v. United States (10th Cir. 2000) 46 F.3d 1000, 1002 -1003; *McMorgan & Co. v. First California Mortgage Co.*, (N.D. CA 1995) 916 F.Supp. 966, 973. See also, Schwarzer, Tashimna & Wagstaff, CAL. PRAC. GUIDE: Fed. CIV. PRO. Before Trial (The Rutter Group 2011). Under a facial attack, the Court considers the allegations of the complaint as true. *Montez v. Department of Navy* (5th Cir. 2004) 392 F.3d 147, 149 – 150; *Safe Air for Everyone v. Meyer* (9th Cir. 2004) 373 F.3d 1035, 1039.

Dan Cunningham's motion contains statements and alleges facts that he believes will defeat both his father's remaining federal claims, as well as any claims remaining on behalf of Liza. Aside from never having disclosed this "evidence" to Plaintiffs, it is not properly before the Court and should not be considered for purposes of this motion[4]. As such, this motion

---

[3] The Court did not actually rule on 18 U.S.C. § 1595 as to either defendant. This section of the code references remedies available to victims under 18 U.S.C. §§ 1590, 1590 or 1591.

[4] Both parties have exchanged initial disclosures, with Plaintiffs voluntarily providing approximately 200 pages of documents and photographs. The only witnesses disclosed by Defendants (aside from themselves) are unknown personnel at the U.S. Attorneys Office, Immigration and Customs Enforcement and eHarmony, as well as Natalya's former husbands. The parties stipulated in their Joint Case Management Conference Statement for April 23, 2012 to reopening discovery. In this motion, as well as other pleadings, Defendants have variously referred to neighbors and other witnesses, photographs and other evidence to refute Plaintiffs' claims that were neither included in their initial disclosures, nor in any supplemental disclosures, as required by FRCP 26(e)(1)(A), and act as another basis for the Court to disregard such extrinsic information in this motion.

_____

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]

*Shuvalova, et al., v. Cunningham, et al. Case No. CV:10:2159 YRG*

should be considered a facial attack.

**B. Liza's State Law Claims Against Dan Are Of The Same Common Nucleus Of Operative Facts As The Federal Claim Against Joe Cunningham**

Dan argues that Liza's state law claims do not "derive from common nucleus of operative fact" or form "but one constitutional case" as required by *Mendoza v. Zirkle Fruit Co.* (9th Cir. 2002) 301 F.3d 1163 (citing to *United Mine Workers of America v. Gibbs*, (1966) 383 U.S. 715, 725). However, supplemental jurisdiction

> "include(s) claims that involve the joinder or interventions of additional parties." [28 USC § 1437(a)] Thus, as long as all claims arise from the same "nucleus of operative facts," the federal court can adjudicate state law claims against defendants who are *not parties to the federal claim* (so-called "supplemental party jurisdiction"). I.e., no diversity of citizenship or independent basis for federal jurisdiction need be shown as to such parties. [See *Ammerman v. Sween* (7th Cir. 1995) 54 F.3d 423, 424-425; *Mendoza v. Zirkle Fruits Co*. (9th Cir. 2002) 301 F.3d 1163, 1172-1173; *Trustees of Construction Industry & Laborers Health & Welfare Trust v. Dester Valley Landscape & Maintenance, Inc*. (9th Cir. 2003) 333 F3d 923, 925 – "Pendent party jurisdiction is constitutional so long as the pendent state law claim is part of the same 'case or controversy' as the federal claim."] Emphasis in the original. Schwarzer, Tashimna & Wagstaff, CAL. PRAC. GUIDE: Fed. CIV. PRO. Before Trial (The Rutter Group 2011).

Dan tries to artificially create distinctions of evidence, facts and argues a non-existent connection between his presence at the property, his behavior, his actions on his own and in concert with this father that form the basis of the human trafficking allegations. Dan's actions – his physical presence, his repeated threats of, and actual sexual assaults on Liza, his physical restraint of Liza, done in Joe's presence with at least Joe's tacit approval, were part of Joe's threats and physical restraint and led both Natalya and Liza to believe that they would each suffer serious harm from Joe *and* Dan. Joe obtained "the labor or services" of Natalya and Liza in part because of Dan's acts.

**C. Federal TVPRA § 1595 Predominates Plaintiffs' Claims**

Dan argues for dismissal of his claims under 18 U.S.C. § 1367(c)(2), asserting that state claims predominate Plaintiffs' First Amended Complaint. He supports this assertion by using the same arguments that Liza's state claims against him do not "derive from common nucleus of

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To
Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]

*Shuvalova, et al., v. Cunningham, et al.*
Case No. CV:10:2159 YRG

5

operative fact" or form "but one constitutional case." Dan's motion puts the proverbially cart before the horse and characterizes the single, surviving federal claim of human trafficking as legally insignificant. The opposite is true. Plaintiffs' state law claims are directly linked to the human trafficking allegations. The Court should not lose sight of this claim:

> Whoever knowingly provides or obtains the labor or services of a person -
> (1) by threats of serious harm to, or physical restraint against, that person or another person;
> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
> (3) by means of the abuse or threatened abuse of law or the legal process …[5]

Joe's actions support the basis for the federal human trafficking claim and the state law claims that arise out of the 1589 claims *and* state claims. Joe not only violated 1589 with his own acts, he was able to continue the violations because of Dan's presence and Dan's acts. Plaintiffs believe that Dan was one of the "people" that Joe referred to who would "take care of" Natalya should she reveal the abuse to the outside world. Liza tried to protect her mother by not telling her of the abuse she suffered by the actions of Joe and Dan because of the express and implied threats made by both men.

Dan argues in his brief that "The quantum of evidence required to either prove or disprove the remaining state law claims against Dan Cunningham is fundamentally different in terms of witnesses [sic] testimony, physical evidence, and investigation than the sole surviving federal claim against Joe Cunningham." (Motion to Dismiss 8:4-7). He continues with this same argument on the basis of "fairness," stating "Therefore, the claims against Dan Cunningham are of such a different nature, requiring different proof amongst different actors that no evidentiary factual overlap between the allegations against Dan Cunningham and Joe Cunningham exists." (Motion 8:19-21). Dan does not, however, explain how or why this

---

[5] A civil remedy – damages (in addition to attorneys fees) – is provided under 18 U.S.C. § 1595:
(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]

*Shuvalova, et al., v. Cunningham, et al.*
*Case No. CV:10:2159 YRG*

6

evidence would be "fundamentally different" than evidence to support the 1589 claims against Joe. He does not indicate a difference in definitions or standards of evidence that would support this conclusory statement. He does not suggest that terms such as "restraint," threat," "serious harm," are distinguishable in the context of 1589 claims, versus the state claims, which are based on the same facts.

Dan's conclusion that Joe would suffer from bias because a jury would be confused or prejudiced because of the "salacious allegations" against Dan is tenuous. (Motion 8:27-9:1) Both men are being accused of very inappropriate sexual behavior with a teenage girl.

Dan cites to *Waters v. Hollywood Tow Service* 2010 U.S. Dist. LEXIS 93091 (C.D. Cal. July 27, 2010) to argue that Liza's state claims implying "complexity and length" of her claims, versus the "narrow and straightforward [Federal] claim. (Motion 9:14-22) First, Dan does not provide anything to support an argument that Liza's state claims are complex or lengthy, nor that the federal claim is "narrow and straightforward." His argument also ignores the harm for Liza. She would be forced to litigate in both state and federal court for her claims against Dan and Joe, where evidence of Dan's actions to facilitate and/or accomplish Joe's 1589 claims are the same or essentially the same as the state claims against Dan. Under this scenario, all parties would have to testify at both trials, all parties would be deposed and have to engage in the same discovery in both cases, and suffer the increased costs involved.

On the basis of the foregoing arguments, Plaintiffs respectfully request that the Court deny Dan's motion to dismiss for lack of subject matter jurisdiction.

Dated: May 11, 2012          LAW OFFICES OF NANCY A. PALANDATI

                                          */S/*
                                       _____
                                       Nancy A. Palandati
                                       Attorneys for Plaintiffs Shuvalova

Plaintiffs' Opposition To Defendant Daniel Cunningham's Motion To Dismiss For Lack Of Subject Matter Jurisdiction [FRCP Rule 12(B)(1)]     *Shuvalova, et al., v. Cunningham, et al.* Case No. CV:10:2159 YRG

7